(No. 34278.—

*In re* IRA H. LATIMER, Petitioner.

*Opinion filed May 23, 1957.*

328

SCHAEFER, J., took no part.

JOHN UNGER, of Danville, for petitioner.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Pursuant to leave granted, Ira H. Latimer has filed a petition to practice law in Illinois. He seeks a reversal of the decision of the Committee on Character and Fitness of the First Appellate Court District refusing to certify applicant's fitness for admission to practice before the courts of this State.

After passing the Illinois bar examination applicant filed with the committee an application for admission, together with affidavits as to his good moral character and general fitness to practice law, as required by Rule 58, section IX. Ill. Rev. Stat. 1955, chap. 110, par. 101.58.

Four hearings were held before a subcommittee and seven before the entire committee between December 22, 1954, and October 26, 1956. The report of the committee, sitting as commissioners, reviewed the evidence and concluded with the statement: "that applicant lacks the qualities of candor, veracity, integrity and responsibility which, in the opinion of the Committee, are fundamental com-

ponents of the good character and fitness necessary for admission to practice in this State."

The committee is an arm of this court. Normally, we will not review the discretion exercised by it, except in the unlikely event that there has been an arbitrary refusal of a certificate. (*In re Frank,* 293 Ill. 263; *In re Anastaplo,* 3 Ill.2d 471.) Since applicant contends that certain of his constitutional rights were violated, we have set the petition down for argument and opinion. *In re Summers,* 325 U.S. 561, 65 S. Ct. 1307; *In re Carter,* 192 F.2d 15.

Applicant contends there was a violation of various sections of the Illinois constitution, the due-process clause of the fifth amendment, the privilege-and-immunities, due-process and equal-protection clauses of the fourteenth amendment to the Federal constitution, and states the principal question is whether the proceedings satisfy the requirements of due process. We think it in order to review the record with reference to the three categories of the investigation which applicant sets up as violative of his constitutional rights.

First, he says he was denied a fair, prompt and orderly proceeding. It was unfair, says applicant, because his application was given different treatment from the numerous other applications; it was not prompt, since he was subjected to eleven hearings over a period of two years; and it was not orderly, in that no issue was presented and he did not know the charges with which he would next be confronted.

His application stated that he had been accused of dishonesty and a suit for accounting resulted, that he had passed an examination for a Chicago public school teacher's license and upon failure of the school board to issue a license he filed a *mandamus* suit and that he had been a defendant in other litigation. Six supporting affidavits were filed. One stated that affiant had heard applicant accused of being radical and another included a statement that ap-

plicant had assured affiant his contacts with the Communists were slight and were some years ago.

The statements in the application and the supporting affidavits alone were enough to put the committee upon notice that more than a routine inquiry was necessary.

The record discloses a wide and varied career. The applicant attended Chicago Theological Seminary in 1927, the University of Chicago in 1927 and 1928, the University of Paris in 1929 and 1930, Ohio State University in 1930 and 1931, the University of Vienna in 1932 and the University of Chicago from 1933 to 1935. He studied law at De Paul Law School and because of poor scholarship, transferred to Chicago-Kent College of Law. From the latter he was dropped for poor scholarship. He then attended and graduated with an LL.B. degree from John Marshall Law School. In addition to his school activities he was employed by Chicago Civil Liberties Committee, worked in the field of religious education and taught school for short periods of time in China, Arkansas, Memphis and Chicago. He had a real estate broker's license, was an ordained minister, worked as a deputy municipal court clerk, and worked for a lawyer who was suspended from the Illinois bar. Applicant admitted that he worked with the Communist and Socialist parties from 1936 to 1945, that he was a member of the Communist party from 1945 to 1947 but stated that he was thereafter anti-Communist. He testified that he broke with the party because of its line on collaboration with civil liberties and democracy. In reply to a question as to whether he would still be a member of the party had the line not changed, he replied: "Well, if the Communist Party were today in the same position that it was, and there was a united front of communists, socialists, liberals, everybody—but that is not in the picture."

With a career which literally carried the applicant to the ends of the earth, it is not surprising that it took time to complete the investigation. Furthermore, applicant was

represented in these proceedings from time to time by four different counsel. Under the circumstances, we cannot say that the hearing was unduly delayed.

We next turn to the charge that the proceedings were not orderly and that applicant never knew what charges he would be called upon to answer. He attempts to interpret Rule 58 to mean that upon filing the application and supporting affidavits, in the absence of complaints (presumably from others), the committee should confine its inquiry to the documents so filed. There is no such stricture in the Rule. It is not only within the committee's power but is its duty to make such inquiries and investigations as seem necessary to pass upon an application for admission. This includes the authority to call witnesses and procure documentary evidence. Obviously, the committee was under no obligation to "prefer charges" in the generally accepted meaning of the phrase. As investigation developed further information bearing upon applicant's character and fitness, he was from time to time given the opportunity to be heard.

Admission cases are not governed by the same rule as disciplinary actions against attorneys, where definite charges are lodged. Under our rules the committee is charged with the duty of inquiry and investigation, not preferring charges, and granting certificates only to such personnel as are fit, by good character and morals, to be admitted to the practice of law.

The power to regulate and define the practice of law is a prerogative of the judicial department, an inherent adjunct of which is to prescribe regulations for the study of law and the admission of applicants for the practice of the profession. *In re Anastaplo,* 3 Ill.2d 471; *In re Day,* 181 Ill. 73.

The second category of alleged constitutional violation is that applicant was denied a hearing before an impartial and unbiased tribunal. Partiality, bias and prejudice are

charged to members of the committee, and some were even accused of being Communist sympathizers.

The members of the Committee on Character and Fitness are commissioners of this court, appointed by it with selective care. They do this work without compensation, as a public service. Applicant admitted that he had made unsupported, unwarranted and reckless statements about two commissioners who, to avoid any question of fairness, voluntarily disqualified themselves before the final determination of this proceeding, and such determination was made without their participation. In addition, while these proceedings were pending before the committee, applicant attempted in May of 1956 to file a scurrilous petition before this court, under oath, attacking these same commissioners, which petition this court denied leave to file.

Later, while applicant's attorney was preparing an argument to present to the commissioners, and without consulting his attorney, applicant attempted to file a similar sworn petition before this court, repeating the unwarranted contents of his previous petition. Leave to file this petition was also denied by this court.

The record indicates that applicant also attempted to discourage the commissioners from their sworn duty of investigation by encouraging, aiding and abetting in the circulation of pamphlets and inducing other forms of publicity on issues irrelevant to the inquiry of the character and fitness of applicant. They were disparaging of the commissioners and even of members of this court and constituted a form of intimidation calculated to compel the granting of a certificate of good moral character and fitness, irrespective of applicant's qualifications.

We see no purpose in spreading on the pages of this opinion the scurrilous accusations made by applicant nor the names of persons recklessly accused. It is sufficient to say that we have carefully read the record and are of the

opinion that the charges leveled against the members of the committee are totally without foundation.

The third constitutional complaint is that incompetent and prejudicial evidence was admitted and competent evidence excluded.

In only one instance was evidence taken out of the presence of applicant. One David R. Laudau testified before the committee, but was recalled later. His prior testimony was made available to applicant and he was given the right of cross-examination.

No competent evidence proffered was excluded. One example of so-called evidence excluded is bitterly complained of by applicant. To test applicant's claim that he had broken with the Communist party, he was asked if he knew lawyers who were members of that party. Upon his affirmative answer he was asked to furnish a list. At his next appearance before the committee, which was made public at his request pursuant to Rule 58 and after he had advised the public press of his proposed attendance, he tendered a list of names entitled: "Some Lawyer Members of the Chicago Civil Liberties Committee Known to Ira H. Latimer as 'Communists'." The committee noted the proffer but decreed its contents irrelevant to the inquiry and returned it to the applicant. Thereafter, he twice sought to file a sworn petition with this court containing the list as an exhibit. Leave to file the petition was denied. Such evidence was improper and had no bearing upon the inquiry.

Before the close of the hearing applicant was authorized to reduce his own testimony to writing in the form of a written affidavit. It was accepted. It is now charged that when this court directed the forwarding of the record, the committee sent no exhibits. In addition to the transcript consisting of 923 pages, there was transmitted to this court all exhibits admitted at the hearing *including* applicant's 30-page affidavit with two additional pages of exhibits attached thereto.

The affidavit has received our special attention. It consists almost exclusively of categorical accusations that six of the ten witnesses called by the committee were Communists. Of the other four, two had signed supporting affidavits for applicant. The affidavit emphasizes the inescapable conclusion, reached when the whole record is read, that everyone who opposed applicant was accused of being a Communist and that he was being persecuted because of his present anti-Communist leanings and activities. His defense is largely a castigation of the committee and witnesses called by it.

Applicant's tactics were not only unjustified but also are contemptuous of and prejudicial to the orderly administration of the investigation provided for by this court under Rule 58. Such actions reflect adversely on the character and fitness of applicant, and, aside from any other considerations, tend to prove applicant's want of moral fitness.

There are other specific considerations which show a lack of moral fitness. In one case in which he had been a defendant, he filed a verified answer and counterclaim for damages. Upon questioning, he admitted that he had not read the pleadings despite his affidavit attached thereto that he had done so. In another case, not mentioned in his sworn application, applicant sued Hearst Publishing Company. He signed this complaint alleging in part that he was not a Communist before, during or after the time of a certain incident reported in a newspaper published by the defendant. Applicant, in his testimony before the committee, admitted that the allegation that he was not a Communist before the time of the incident was false. With reference to a sworn petition filed in this court, heretofore referred to, applicant testified that his investigation was incomplete and insufficient to warrant any such accusation as was contained in that petition and that there was insufficient evidence of the charges.

The committee did not find nor is its refusal to certify based upon the premise that applicant was a Communist at the time of the hearings. Its finding that he lacked candor, veracity, integrity and responsibility was entirely justified. He showed a lack of candor in failing to list all litigation to which he had been a party. His veracity and integrity were subject to question, since he admitted giving false oaths. He showed a definite lack of responsibility by making unproved statements against one and all who opposed or crossed him.

A condition precedent to admission to practice law in this State, imposed by the legislature, is the taking of an oath to support the constitution of the United States and the constitution of the State of Illinois. (Ill. Rev. Stat. 1955, chap. 13, par. 4.) As we said in the case of *In re Anastaplo,* 3 Ill.2d 471, at 476: "We think the conclusion inescapable that the inquiry of the committee must be directed, in part, to the ability of an applicant to take the required oath in good conscience." Neither the committee nor this court can look into the mind of man but must be guided by his actions and words. Here, the applicant admitted giving false oaths, and it is reasonable to assume that the committee had grave doubts as to the sincerity of any oath to be taken by such an applicant.

We conclude that applicant was given a full and adequate hearing and that no constitutional right was violated.

The report of the Committee on Character and Fitness is hereby approved and the applicant's petition dismissed.

*Petition dismissed.*

Mr. JUSTICE SCHAEFER took no part in the consideration or decision of this case.