(No. MR 1297.

*In re* ANTHONY R. MARTIN-TRIGONA, Petitioner.

*Opinion filed September 25, 1973.*

302

JOHN F. BANZHAF III, of Washington, D. C., for applicant.

ROBERT P. CUMMINS and JOHN L. CLINE, both of Chicago, for the Committee on Character and Fitness.

PER CURIAM: Petitioner, Anthony R. Martin-Trigona, applies to this court for admission to the practice of law in this State after the Committee on Character and Fitness for the First Judicial District was unable to certify that he had the requisite good moral character and general fitness to practice law. 50 Ill.2d R. 708(d).

Petitioner passed the Illinois bar examination in March, 1970, and submitted his application with the necessary affidavits to the Committee on Character and

Fitness for the Fourth Judicial District. That committee conducted an extensive investigation of petitioner and held four hearings. Petitioner subsequently sought disqualification of the committee, and we ordered the matter referred to the Committee on Character and Fitness for the First Judicial District and further directed that committee to employ counsel to assist in the discharge of its duties.

Following an extensive period of correspondence between counsel for the committee and its members and petitioner and his counsel, during which time petitioner's counsel withdrew and new counsel was retained by him, that committee advised the petitioner of four matters that bore adversely to his application. First, his refusal to undergo a current psychiatric examination; second, his misleading characterization on his application of pending litigation in which he was involved; third, his communications with the committee and its counsel; fourth, the volume, nature and content of the litigation set out in his application. A hearing was held at which petitioner was represented by counsel. The committee, after receiving evidence, including various affidavits in support of petitioner's admission, was unable to certify him as qualified to practice law. In his brief, petitioner presents three issues: first, the record does not support the committee's findings; second, he was denied procedural due process; third, any further delay in his admission to practice would be unconscionable.

As the United States Supreme Court has said, "A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." (*Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 239, 1 L. Ed. 2d 796, 801-2, 77 S. Ct. 752; Law Students Civil Rights Research Council v. Wadmond, 401 U.S. 154, 27 L. Ed. 2d 749, 91 S. Ct. 720.*) It follows that the State possesses the

authority to inquire into an applicant's private and professional qualifications in making this determination. In *Konigsberg v. State Bar of California, 366 U.S. 36, 6 L. Ed. 2d 105, 81 S. Ct. 997,* the court described a screening process for applicants who sought admission to the California bar. This procedure is comparable to that existing in this State, which initially places the burden of establishing good moral character and fitness to practice upon the applicant. Properly constituted committees have the power to investigate, question and determine fitness. (*In re Latimer, 11 Ill.2d 327, cert. denied, 355 U.S. 82, 2 L. Ed. 2d 111, 78 S. Ct. 153.*) Where an applicant refuses to cooperate in such investigation by failing to answer constitutionally permissible questions or where the evidence adduced demonstrates other appropriate bases, a State may deny admission.

In the case at bar the First District committee requested that petitioner undergo a psychiatric examination by a specialist who would be mutually acceptable to the parties. This request occurred after the Fourth District committee had obtained information in petitioner's Selective Service file which indicated that petitioner had been purportedly found unfit for military service because of a "moderately-severe character defect manifested by well documented ideation with a paranoid flavor and a grandiose character." His rejection had occurred subsequent to filing his initial application for admission. This information was revealed after the chairman of the Fourth District committee had written the State Director of Selective Service on March 12, 1971, seeking access to petitioner's file. Several days later the State Director, pursuant to the appropriate regulation then in effect (32 C.F.R. sec. 1606.32(4)), authorized that an appropriate committee representative would be permitted to "review" this material at State Selective Service headquarters.

At the hearing before the First District committee, petitioner objected to the introduction of this Selective

Service material. The committee overruled the objection and accepted the documents. Petitioner then submitted affidavits from his personal psychologist to the effect that any emotional problems he had previously experienced were due to factors that had since been reconciled. Petitioner further challenged the power of the committee to recommend a psychiatric examination.

Petitioner does not now contest the validity of the aforementioned Federal regulation but rather seeks to exclude the introduction of the Selective Service material on the basis that no lawful authority was established to copy the documents because the authorization only stated that the file might be reviewed. He specifically objects to the use of several documents in the file because of their alleged hearsay nature and his inability to confront the declarant as to the truth of matters therein stated. He further argues that a subsequent favorable report submitted by his personal psychologist in February, 1973, as to his present emotional stability far outweighs any detrimental observations contained in prior reports by this individual. Finally, petitioner asserts that he is willing to undergo a psychiatric examination, but only if this court so orders.

Consideration of the myriad issues raised as to petitioner's mental stability is not necessary. We find that the matters hereinafter discussed are sufficiently adverse to petitioner to warrant denial of his application for admission.

The second matter to be considered is the description of a pending action listed in petitioner's amended application filed with the First District committee which characterized a lawsuit filed by petitioner as one "for interference with [a] lease." The record reveals that this small-claims action, commenced in January, 1972, against a judge, was for "conspiracy, extortion, attempted theft and related offenses *** violation of the Organized Crime Control Act of 1970, and denial of due process and civil

rights \*\*\*, and other tortious conduct." It is to be gathered from the record that this action apparently arose from this judge's conduct while in the performance of his judicial functions. Petitioner sought damages of $500.

Petitioner now alleges that there is no proof that this was a mischaracterization. Further, he maintains that his attorneys prepared this application and he did not even see this document prior to his signing the affidavit of verification to the effect that the matters contained therein were true. At the hearing before the First District committee, his former attorneys admitted that they had prepared the amended application and submitted it prior to petitioner having seen it. However, the attorneys testified that the amended application was prepared from information supplied by the petitioner and that they were unaware of the true nature of the case.

Our rules (50 Ill.2d R. 708(b)) require that an applicant submit a verified application to the Committee on Character and Fitness. It is his duty to see that matters therein are accurately described. Where, as here, a gross mischaracterization appears, the committee is justified in refusing to certify the applicant unless a reasonable explanation is proffered. A satisfactory explanation was not made in this instance. And, as we noted in the case of *In re Latimer, 11 Ill.2d 327, 336, cert. denied, 355 U.S. 82,* the giving of improper oaths subjects the declarant's integrity and veracity to question.

It was further proved that petitioner in his correspondence with the First District committee, its counsel and this court, made charges against the members of that committee and its counsel that were untrue, scurrilous and defamatory. While the volume of correspondence is extensive, the substance of several letters will be set out in detail. In correspondence to the committee's counsel he made a number of frivolous demands including a request for a list of clients of each committee member and the political affiliations of each member. In another, petitioner

charges that the General Assembly and this court were corrupt, that this court had already decided the merits of his case and that the committee members were emotionally ill and might be compared to "scum" that rose to the top of their profession. In correspondence with this court petitioner charged that "clubby, powerful, Chicago Lawyers" were unduly delaying and harrassing him and he demanded that the committee members undergo psychiatric examination. Petitioner also asserted that in secret sessions with his prior counsel, the committee's attorney attempted to force him to cease various pending litigation. He further alleged that he had been harrassed by the organized bar through its questionable, illegal acts, and its attempt to affect a political campaign he was waging at the time. The record reveals charges of a similar nature in other correspondence which contains at times vulgar and profane language.

Petitioner contends that this correspondence is protected by the first amendment's freedom of speech provision and because of its private nature has not caused public harm to any person, organization or profession. Thus, while he concedes these communications are unusual and forceful, he maintains that no action may be taken against him. The question presented is not the scope of petitioner's rights under the first amendment but whether his propensity to unreasonably react against anyone whom he believes opposes him reveals his lack of responsibility, which renders him unfit to practice law.

This type of conduct is not confined to these proceedings. Where judges have ruled against him, petitioner has seemingly ignored proper appellate procedure by his unprofessional actions. He made a "Motion to Vacate Fraudulent Judgment [against petitioner] Entered by an Insane Judge", accusing this judge of misconduct caused by "a pathological antipathy of the defendant [petitioner] which rendered her [judge] temporarily mentally insane for the purposes of proceeding against the

defendant." In this motion petitioner asserted that this judge was a defendant in another action commenced by petitioner and therefore should have disqualified herself from consideration of the case in which a monetary judgment was entered against him. This case is described in his amended application for admission as involving a "parking violation" which was filed in December, 1971.

In another matter petitioner filed a motion in December, 1972, against another judge, seeking a hearing to determine "his sanity, competence and fitness to hold judicial office." In petitioner's affidavit in support of this motion he averred that the judge told him to entreat another individual in order to obtain an extension of time in a pending matter. Petitioner refused and further suggested to the judge that the latter "not participate in the case further because you [judge] will be named as a defendant in a related case today." Petitioner claimed that the judge then began to yell, physically assault him, and "spit" on him. As a result of this altercation petitioner concluded that the judge was "not mentally competent to discharge the duties of a Circuit Judge and, whether from marital or medical problems, or from psychopathic hatred of the affiant [petitioner], is not in a fit state of mind to act in any case involving affiant." Petitioner substantially repeated his conclusions as to the sanity of this judge when he entered his appearance in the case therein pending before the same judge, and in this document further alleged that the judge had unsuccessfully attempted to solicit a bribe from petitioner. He further castigated opposing counsel, a city attorney, in this pending matter as being "unscrupulous and incompetent" and "illegally" representing the city of Urbana, Illinois.

On the same day petitioner filed the aforementioned motions, he also instituted an action naming the judge as a defendant. It was alleged that this judicial officer was involved in a vast conspiracy with real-estate brokers, a bank, the city attorney and others designed to deprive

petitioner of his property interests and, *inter alia,* it further alleged this judge's involvement in the aforementioned bribery attempt. It would appear from the record that petitioner then sought dismissal of this action without prejudice.

Further, petitioner has, in the course of other business relations in February, 1973, written a letter to a member of the bar referring to documents which bore this attorney's signature as having been signed by a "palsied lunatic." Petitioner specifically charged this attorney with "champerty, barratry and maintenance" and described him as "shaking and tottering and drooling like an idiot, \*\*\* a physically and mentally sick man \*\*\*." Petitioner demanded that this attorney cease his "insane activity." The invective directed against this lawyer, who suffers from a mild case of cerebral palsy, was occasioned upon his serving "notice of forfeiture" upon petitioner in an unrelated real-estate transaction. Petitioner objected to the introduction of this letter and several other aforementioned documents because both sides had rested their cases. Thus he concludes there was no need for him to attempt to refute them. The committee's acceptance of this material was not improper, for we believe that committee counsel had the right to introduce evidence in rebuttal to petitioner's presentation, and many of these matters arose after this counsel had initially presented his case.

Such conduct by an attorney would warrant disciplinary action. (*In re Sarelas, 50 Ill.2d 87.*) Where it appears that a candidate, who represents to this court that he is fit to practice law, proceeds in the same manner, it can only result in a basis for denial of his application.

Petitioner argues that he was denied procedural due process before the First District committee. The thrust of his allegation is threefold. He asserts that the committee counsel improperly functioned in a dual role of "investigator and prosecutor" while advising the committee

members as to legal matters pertaining to this case. Secondly, he implies that the committee was not in a position to render a decision adverse to him because of his accusations directed at committee members. Finally, he suggests that the entire committee may have been prejudicially affected because four of its members voluntarily disqualified themselves after substantive rulings had been made. To alleviate any possible charge of bias in future cases of this nature petitioner suggests a possible alternative procedure applicable to attorney disciplinary matters. However, petitioner requests that in this instance, because of lengthy delay, we ignore the committee's recommendation in arriving at our decision as to the propriety of petitioner's qualifications.

Our decision in the case of *In re Latimer, 11 Ill.2d 327, cert. denied, 355 U.S. 82,* is dispositive of several of these contentions. In that case we observed: "Admission cases are not governed by the same rule as disciplinary actions against attorneys, where definite charges are lodged. Under our rules the committee is charged with the duty of inquiry and investigation, not preferring charges, and granting certificates only to such personnel as are fit, by good character and morals, to be admitted to the practice of law." (11 Ill.2d at 332.) We further noted that it was the committee's duty to conduct a sufficient investigation to enable it to properly pass upon an admission application. In this regard we find no basis for petitioner's critical analysis of the function of counsel for the committee.

We must reject the contention that the committee was an improper forum to decide petitioner's case because it had been allegedly prejudiced by his accusations against it. The tenor of petitioner's correspondence is analogous to that involved in *Latimer*, and our remarks there are equally applicable in this instance. "They [applicant's statements] were disparaging of the commissioners *** and constituted a form of intimidation calculated to compel the granting

of a certificate of good moral character and fitness, irrespective of applicant's qualifications." (11 Ill.2d at 333.) Moreover, under the circumstances, we believe the voluntary disqualification by several committee members during the course of these proceedings is rather indicative of the conclusion that petitioner received a proper determination as to the merits of his application and we reject any contrary suggestion.

In petitioner's presence at the termination of oral argument in this cause on June 21, 1973, we directed the clerk of this court to file all correspondence directed to the court or its members by petitioner concerning this matter. This material was to be incorporated in the record. After this cause was taken under advisement for decision and opinion, each member of this court on or about July 23, 1973, received notice that his deposition was being taken by petitioner on written interrogatories in a pending action commenced by petitioner in the Federal District Court, Northern District of Illinois (73 C 1255), against counsel for the First District committee and other parties. The clerk is now directed to file those interrogatories as a part of the record in this proceeding.

After review of all these matters, we find that it has been demonstrated that petitioner should not be admitted to the practice of law in this State. While it is not challenged that he may possess the requisite academic qualifications to practice law, the record overwhelmingly establishes that he lacks the qualities of responsibility, candor, fairness, self-restraint, objectivity and respect for the judicial system which are necessary adjuncts to the orderly administration of justice. Petitioner's application for admission is denied.

*Application denied.*