Anthony R. MARTIN–TRIGONA,
Plaintiff-Appellant,

v.

Robert UNDERWOOD et al., and
Supreme Court of Illinois et al.,
Defendants-Appellees.

Nos. 74–1526, 74–1527.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1975.

Decided Dec. 17, 1975.

Rehearing Denied Jan. 23, 1976.

Anthony R. Martin-Trigona, pro se.

Philip B. Kurland, Alan L. Unikel, William J. Scott, Atty. Gen., Fred F. Herzog, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before SWYGERT and TONE, Circuit Judges, and GRANT,* Senior District Judge.

PER CURIAM.

Early in 1970, Appellant Anthony R. Martin-Trigona passed the Illinois bar examination. Thereafter, pursuant to the Illinois Supreme Court Rules on Admission to the Bar, Chapter 110A, Illinois Revised Statutes (1971), § 701 et seq., he submitted his application for admission, together with affidavits regarding his character, to the Committee on Character and Fitness for the Fourth Judicial District. The Fourth District committee, during its investigation into appellant's character and fitness to practice law, consulted appellant's Selective Service records. Said records included a psychiatric evaluation to the effect that appellant was "unacceptable for induction because of a moderately-severe character defect manifested by well documented ideation with a paranoid flavor and grandiose character." When appellant became aware of this, he petitioned the Illinois Supreme Court, asking that his application be assigned to the Committee on Character and Fitness for any other district for consideration. The Supreme Court of Illinois granted this request and referred the matter to the Committee on Character and Fitness for the First Judicial District. The First District committee, after reviewing appellant's up-dated application, including certain records obtained from the Fourth District committee, requested that appellant undergo a psychiatric examination. After appellant refused to undergo the examination, however, he was notified by the committee that it was prepared to file a statement with the Illinois State Board of Law Examiners that it could not certify that appellant had the requisite good moral character and general fitness to practice law. At appellant's request, a hearing was held on the matter before the full committee. Subsequent thereto, the First District committee found that appellant's application for admission to the Bar should be denied. The Illinois Supreme Court, after reviewing the proceedings before the First District committee, affirmed the committee's decision. *In re Martin-Trigona*, 55 Ill.2d 301, 302 N.E.2d 68 (1973). Appellant then filed an action in the United States District Court for the Northern District of Illinois, Eastern Division, challenging the denial of his application (No. 74–1527). In addition, a related action was filed in the same district court in which appellant challenged the alleged unlawful use of his Selective Service records by the Supreme Court of Illinois in denying his application (No. 74–1526). The court below, nevertheless, granted appellees' motion to dismiss Cause No. 74–1527, holding that it lacked jurisdiction to relitigate and review the judgment of a state supreme court, and that the conduct of appellees was protected from attack under the doctrine of judicial immunity. Further, the district court held that because of appellant's petition for a writ of certiorari, which was then pending in the United States Supreme Court, it would be "precluded from any review of [appellant's] claims" on the theory of res judicata "once the United States Supreme Court [had] considered [appellant's] position." Likewise, the district court granted appellees' motion to dismiss in the companion case, No. 74–1526. Appellant thereupon instituted the present appeal.

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

We find it unnecessary to reach the questions raised by the defenses of res judicata and judicial immunity, because we conclude that in any event the facts of record concerning which there is no genuine issue demonstrate that appellees, in investigating, hearing, and ruling upon appellant's application for admission to the Illinois bar, did not abridge any of appellant's federal constitutional rights. Accordingly, there is no federal claim on which relief could be granted, and the judgment must be affrmed.

First of all, with regard to the issue of equal protection, appellant has argued that the same rights which are accorded to attorneys who are already admitted to the bar—in disciplinary proceedings, for example—should likewise be given to applicants for bar membership. In this respect, he argues that two classifications exist in the legal profession under which licensed attorneys receive their full panoply of due process rights while bar applicants do not. Citing *Siegel v. Committee of Bar Exam., State Bar of Cal.,* 10 Cal.3d 156, 110 Cal.Rptr. 15, 514 P.2d 967, 983 (1973), appellant maintains that a bar applicant is indeed entitled to full constitutional protection. Further, appellant asserts that it does violence to due process to require a bar applicant, as in the instant situation, to sustain the burden of proving his good character, or innocence, and to require him to disprove any accusations which are made against him. It is improper, he says, to place a bar applicant, as here, in a position wherein he is "presumed to be guilty." Finally, appellant has argued that the Character and Fitness Committee was not authorized to examine his Selective Service records and that the use of his draft file by the committee in its investigation constituted a violation of his right to confidentiality in those records. Appellant concludes, therefore, that this Court should reverse the decision of the district court and remand the cause for a trial on the merits. Only in this way, he argues, will he be afforded the opportunity to assert and defend his federal constitutional claims in a fair and impartial federal forum. He maintains that under the instant circumstances he is entitled to no less.

We begin with the premise that admission to practice law in a state and before its courts is primarily a matter of state concern, *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and the determination of which individuals have the requisite knowledge and skill to practice may properly be committed to a body such as the Illinois Board of Law Examiners. *Douglas v. Noble,* 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923). It follows from this proposition that a federal court is not justified in interfering with a state's determination in such a matter unless there is proof that an applicant has been denied admission for constitutionally impermissible reasons. *Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474, 477 (7th Cir. 1974); *Schware, supra,* 353 U.S. at 238–240, 77 S.Ct. 752; *id.* at 248–249, 77 S.Ct. 752 (Frankfurter, J., concurring); *cf. Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). In this regard, it has been held that the only constitutionally permissible state objective in licensing attorneys is the assurance that the applicant is capable and fit to practice law. *Keenan v. Board of Law Examiners of State of N. C.,* 317 F.Supp. 1350, 1359 (E.D.N.C.1970). Accordingly, in the present case we decline to invade the province of, or impinge upon the procedures of the State of Illinois in its determination as to the qualifications of bar applicants unless, of course, we are persuaded that there has been a constitutional deprivation involved. Because we do not find any constitutional infirmity to exist in the instant case, however, we affirm the judgment of the district court which upheld the State's decision to deny appellant's application for admission to the Illinois Bar.

The reasons for our decision are well documented. First of all, as to appellant's argument that bar applicants should be entitled to the identical rights

that are afforded to admitted attorneys, we are mindful of Justice House's observation in the case of *In re Latimer,* 11 Ill.2d 327, 143 N.E.2d 20, 23 (1957), wherein he stated, on behalf of the Illinois Supreme Court, that:

> Admission cases are not governed by the same rule as disciplinary actions against attorneys, where definite charges are lodged. Under our rules the committee [on Character and Fitness] is charged with the duty of inquiry and investigation, not preferring charges, and granting certificates only to such personnel as are fit, by good character and morals, to be admitted to the practice of law.

This same established standard was applied by the Illinois Supreme Court in the instant case, *In re Martin-Trigona,* 55 Ill.2d 301, 302 N.E.2d 68, 73 (1973), and our review of the record herein fails to reveal that the procedure utilized by the committee in denying appellant's application for admission could be said to have deprived him of equal protection of the law. The Supreme Court of Illinois has made it perfectly unambiguous, in its review of the process relative to bar application cases, that matters of fitness for bar admission and matters involving disciplinary actions against attorneys involve completely dissimilar procedures and are governed by a different set of rules and regulations, mainly because of the distinguishable nature of the two proceedings. Recognizing, as we must, such a definitive interpretation by the Illinois Supreme Court as to the distinctive nature of its admission procedures—which, as noted earlier, is indeed a matter primarily of state concern and within the state's control—we cannot agree with appellant's contention that he has been denied equal protection. As has been stated, "[t]he Constitution does not require things which are different in fact . . . to be treated in law as though they were the same." *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). "Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends" as long as "the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.' " *Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966). We are of the firm conviction that in defining that class of persons subject to the procedures for admission to the bar, the distinctions that have been drawn herein do indeed have "some relevance to the purpose for which the classification is made," *Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966); *Carrington v. Rash,* 380 U.S. 89, 93, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *Louisville Gas Co. v. Coleman,* 277 U.S. 32, 37, 48 S.Ct. 423, 72 L.Ed. 770 (1928); *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920), and that purpose is to insure that only those applicants who are fit to practice law are granted entrance into the profession in order that high professional standards may be maintained. We reject appellant's contention as meritless.

■ Similarly, we are unpersuaded by appellant's assertion that he was not afforded due process of law. As noted above, appellant's primary argument in this regard rests on burden of proof grounds. He claims that throughout the entire process involved herein the burden devolved on him to prove his innocence (good character) and to disprove the "charges" of bad moral character which the committee had advanced against him. An additional argument that appellant has raised for our consideration involves his challenge on due process grounds to combining the investigative and adjudicatory functions within the single entity of the committee. We are of the opinion that neither of these contentions is substantial or supported in the record. As to the allocation of burden of proof, it is apparent that the State of Illinois requires that an applicant for admission to the bar bear the burden of proving good moral character and fitness to practice law. *In re Martin-Trigona, supra,* 302 N.E.2d at 70. Under such a stricture, an applicant

must initially furnish enough evidence of good character to make a prima facie case. The examining committee then has the opportunity to rebut that showing with evidence to the contrary. Such evidence may result from the committee's own independent investigation, from an applicant's response to questions on his application form, or from committee interrogation of the applicant himself. *Konigsberg v. State Bar,* 366 U.S. 36, 41–42, 86 S.Ct. 997, 6 L.Ed.2d 105 (1961). In the instant case, appellant made an initial showing of his character and fitness by submitting affidavits thereon to the fitness committee along with his application for admission. However, the committee, upon its authorized investigation into appellant's fitness to practice law, *In re Latimer, supra,* 143 N.E.2d at 23, rebutted appellant's showing of good character and fitness citing the following four reasons as bearing adversely on his application: (1) his refusal to undergo a current psychiatric examination; (2) his misleading characterization on his application of pending litigation in which he was involved; (3) his communications with the committee and its counsel; and (4) the volume, nature, and content of the litigation set out in his application. Subsequently, a hearing was held, the result of which was that the committee was unable to certify appellant as qualified to practice law. The Supreme Court of Illinois affirmed.

This Court is convinced that the above-recited procedure cannot be said to have denied appellant due process of law, in that said procedure was in full compliance with the established requirements as set out in *Latimer, supra,* and more fully elaborated in *Konigsberg, supra.*

█ Further, as to appellant's due process attack upon the dual function of the Character and Fitness Committee, although we recognize that conferring investigative and adjudicative powers on the same individuals may create the possibility of an unconstitutional risk of bias, we also recognize that one who asserts this contention necessarily carries or assumes a difficult burden of persuasion. Initially, he must overcome a presumption of honesty and integrity in those serving as adjudicators; and second, he "must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Similar claims to the one advanced by appellant in the instant case have been squarely rejected in prior decisions of the Supreme Court, *Federal Trade Comm'n v. Cement Institute,* 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); *Labor Board v. Donnelly Co.,* 330 U.S. 219, 236–237, 67 S.Ct. 756, 91 L.Ed. 854 (1947); *Richardson v. Perales,* 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and we likewise, on the basis of *Withrow, supra,* reject appellant's argument in the instant case, absent any showing in the record or by appellant himself that the dual role played by the committee herein was either tainted by dishonesty or contained an unacceptable risk of bias against the appellant.

█ Finally, we must address ourselves to appellant's allegation that there was an improper use of his Selective Service file by the committee during its investigation into his character and fitness to practice law and by the Supreme Court of Illinois in its denial of his application (Cause No. 74–1526). Apparently, appellant is here contending that his right to privacy in those records was violated. As we have noted above, however, it is undisputed that a state has a constitutionally permissible and substantial interest in determining whether an applicant for its bar possesses "the character and general fitness requisite for an attorney and counsellor-at-law." *Law Students Research Council v. Wadmond,*

38

401 U.S. 154, 159, 91 S.Ct. 720, 724, 27 L.Ed.2d 749 (1971); see also *Konigsberg, supra,* 366 U.S. at 40–41, 86 S.Ct. 997; *Schware, supra,* 353 U.S. at 239, 77 S.Ct. 752. Moreover, it is universally accepted that a state may properly conduct an investigation into character, has wide freedom to gauge, on a case-by-case basis, the fitness of an applicant to practice law, *In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 2857, 37 L.Ed.2d 910 (1973), and to that end may inquire into an applicant's private and professional qualifications by procuring documentary evidence. *In re Latimer, supra,* 143 N.E.2d at 23. In the instant case, the Committee on Character and Fitness for the Fourth Judicial District obtained appellant's Selective Service file by and under the authority of the State Director of Selective Service and pursuant to 32 C.F.R. § 1606.–32(4), for the purpose of reviewing the material contained therein as an aid in determining appellant's fitness to practice law. This information was subsequently considered by the First District Committee. We are of the opinion that such material was properly obtained as within the purview of the committee's authority to investigate appellant's character, was indeed pertinent to the committee's inquiry into appellant's qualifications to practice law, and bore directly upon appellant's moral character which, of course, has a "rational connection with the applicant's fitness or capacity to practice law." *Schware, supra,* 353 U.S. at 239, 77 S.Ct. at 756. We conclude that it was entirely proper, then, for the committee to consider such material in making its recommendation to deny appellant's application and for the Illinois Supreme Court to consider said material in making its decision to uphold the committee's determination. Accordingly, appellant's position herein must be rejected.

Finding as we do, therefore, on the basis of our careful review of the record herein, that the process or procedure which resulted in the denial of appellant's application for admission to the Bar of the State of Illinois was not tainted by and did not involve any constitutional infirmities, and that the denial of appellant's application itself was not grounded upon any constitutionally impermissible reasons, this Court has no alternative but to sustain the judgment of the court below. Accordingly, the judgments entered by the district court in Causes No. 73 C 2709 and 73 C 2653 are hereby affirmed.