EDWARD M. KALISH, Plaintiff-Appellant, v. ILLINOIS EDUCATION AS-
SOCIATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 86—2273

Opinion filed June 26, 1987.

Michael L. Closen and Hope F. Keefe, both of Brunswick & Keefe, of
Blue Island, for appellant.

Harold A. Katz and Irving M. Friedman, both of Katz, Friedman, Schur
& Eagle, of Chicago, for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff brought an action against defendants to recover damages for defamation, intentional infliction of emotional distress and civil conspiracy. The action was based on statements defendants allegedly made to a panel of the Character and Fitness Committee of the Illinois Supreme Court when plaintiff applied for admission to the Illinois bar. Defendants moved to dismiss the amended complaint on the ground that the communication in question was absolutely privileged. The court granted defendants' motion, from which order plaintiff has appealed.

Plaintiff, a former employee of the Illinois Education Association (IEA), an affiliate of the National Education Association (NEA), graduated from law school in January 1984 and took the February bar examination, which he passed. As part of the bar application process, plaintiff was required to execute an "AUTHORIZATION AND RELEASE" in which he consented to being investigated by the Character and Fitness Committee (the Committee) as to his "moral character, reputation and fitness for the practice of law." The form authorized every company, corporation, association or institution "having control of any documents, records and other information pertaining to [him], to furnish *** to any Character and Fitness Committee, any such information *** or any other pertinent data." A copy of that document was sent by the Committee to the IEA, which was requested to provide information about plaintiff's employment and his reputation and character. IEA's response has never been disclosed to plaintiff.

Plaintiff averred in his amended complaint that when he attended an interview before three members of the Committee, one member, "while reading from a document bearing the IEA letterhead," asked him if he had ever committed a certain crime involving moral turpitude. Plaintiff, who had not been placed under oath, denied the accusation and demanded to know the basis and source of the charge. The Committee refused to elaborate or divulge the source, explaining that it was not engaged in a hearing of the matter but merely was gathering information. The Committee, however, asked plaintiff to undergo a psychiatric evaluation and plaintiff complied. The Committee subsequently recommended plaintiff for admission to the bar in July 1984 and he was admitted on July 25, 1984, approximately two months after the overwhelming majority of applicants who had passed the February 1984 bar examination had been admitted. No formal hearing was ever conducted regarding plaintiff's admission to the bar.

Plaintiff's amended complaint alleged that defendants, out of hostility toward plaintiff and in retaliation for a lawsuit he had filed against them, falsely and maliciously defamed him to the Committee. The complaint alleged further that defendants, knowing that plaintiff's health had been impaired due to job-related stress and aware of the emotional suffering which would accompany their defamatory statements, intentionally inflicted severe emotional distress upon plaintiff. Finally, plaintiff alleged that defendants wrongfully agreed and conspired to make knowingly false statements about him to the Committee. On defendants' motion, the amended complaint was dismissed with prejudice, the court finding that their statements to the Committee were absolutely privileged as a communication with a quasi-judicial body.

■ The sole issue presented by this appeal is whether the Character and Fitness Committee is a quasi-judicial body, thereby entitling defendants to an absolute privilege for statements allegedly made in response to the Committee's inquiry into plaintiff's "moral character, reputation and fitness for the practice of law."[1] Whether a defamatory statement is protected by an absolute or a qualified privilege is a question of law for the court. *Spencer v. Community Hospital of Evanston* (1980), 87 Ill. App. 3d 214, 219, 408 N.E.2d 981.

The parties agree that statements made during quasi-judicial proceedings are absolutely privileged. (*Richardson v. Dunbar* (1981), 95 Ill. App. 3d 254, 256, 419 N.E.2d 1205.) Whether any given proceeding by an administrative or executive body is quasi-judicial depends upon the powers and duties of the body conducting the proceeding and upon the nature of the proceedings themselves. (95 Ill. App. 3d 254, 257, 419 N.E.2d 1205.) Six powers have been isolated as differentiating a quasi-judicial body from that performing merely an administrative function: (1) the power to exercise judgment and discretion; (2) the power to hear and determine or to ascertain facts and decide; (3) the power to make binding orders and judgments; (4) the power to affect the personal or property rights of private persons; (5) the power to examine witnesses, to compel the attendance of witnesses,

---

[1]"As a matter of public policy, certain types of defamatory statements are deemed privileged so that the person making the statement will not be deterred from speaking by the threat of civil liability. When absolute privilege is granted, no cause of action for defamation lies against the person making the statement even if it is made with malice. [Citation.] When only qualified privilege is granted, the person making the statement is immune from liability unless some element such as malice is present." *Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652, 653-54, 490 N.E.2d 1062.

and to hear the litigation of issues on a hearing; and (6) the power to enforce decisions or impose penalties. (*Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 419-20, 465 N.E.2d 1059, citing *Parker v. Holbrook* (Tex. Civ. App. 1982), 647 S.W.2d 692, 695.) A quasi-judicial body need not possess all six powers; however, the more powers it possesses, the more likely the body is acting in a quasi-judicial manner. 125 Ill. App. 3d 415, 420, 465 N.E.2d 1059.

■ At the outset of our discussion, we note that "[t]he power to regulate and define the practice of law is a prerogative of the judicial department, an inherent adjunct of which is to prescribe regulations for the study of law and the admission of applicants for the practice of the profession." (*In re Latimer* (1957), 11 Ill. 2d 327, 332, 143 N.E.2d 20, *appeal dismissed* (1957), 355 U.S. 82, 2 L. Ed. 2d 111, 78 S. Ct. 153.) By rule, the Supreme Court of Illinois has delegated the responsibility of determining an applicant's fitness to be admitted to the practice of law to a Committee on Character and Fitness, which it appoints in each of the judicial districts of the State. (87 Ill. 2d R. 708(a).) The committees are designated as bodies of commissioners of the supreme court. 87 Ill. 2d Rules 708, 709(b).

The commissioners "are *** empowered and charged to receive and entertain complaints, to make inquiries and investigations, and to take proof from time to time as may be necessary, concerning applications for admission to the bar, *** and the good moral character and general fitness to practice law of applicants for admission." (87 Ill. 2d R. 709(b); *In re Latimer* (1957), 11 Ill. 2d 327, 332, 143 N.E.2d 20.) Rule 709(b) provides further that "[u]pon application by the commissioners, the clerk of the Supreme Court shall issue *subpoenas ad testificandum, subpoenas duces tecum,* or *dedimus potestatem* to take depositions." Under the rule, witnesses must be sworn and all testimony must be taken under oath and transcribed. The commissioners may seek judicial enforcement of subpoenas.

Subject to the approval of the supreme court, the Character and Fitness Committee for each judicial district is given authority "to make, adopt, and alter rules not inconsistent with this rule, for the proper performance of [its] functions." (87 Ill. 2d R. 709(a).) The Committee for the First District has adopted comprehensive rules of procedure.

Under Rule 2, the Committee requests employers of applicants to complete and return certain forms prescribed by the Board of Law Examiners, including a form which asks the employer to state what his records show as to the applicant's general conduct and whether he has ever heard "of any fact or charge reflecting adversely upon the

applicant's reputation and character." The employer is further requested to "state any facts favorable to or against applicant not covered by the foregoing questions which [he] think[s] should be made known to the Committee in connection with its duty to determine whether [the applicant] is worthy of the highest trust and confidence."

The rules of the Committee provide for an interview of an applicant for admission to the bar by a section of the Committee determined by the Chairman. (Rules 4, 5.) "Upon his personal appearance before a section of the Committee, the applicant shall first be duly sworn and thereupon interrogated orally upon the subject matter covered by the verified questionnaire and the documents submitted therewith so as to bring out fully the facts sought to be discovered by said questionnaire." (Rule 5.) Any member of the section may continue the matter for further investigation, until such investigation has been completed. (Rule 7.) A unanimous vote of the section is required for favorable action by the section. (Rule 6.) The matter then goes to the Committee, which may certify the applicant as being of good moral character under a detailed procedure set forth in Rule 8.

Supreme Court Rule 708(c) (87 Ill. 2d R. 708(c)) provides that "[i]f the [C]ommittee is of the opinion that the applicant is of good moral character and general fitness to practice law, it shall so certify to the Board of Law Examiners and the applicant shall thereafter be entitled to admission to the bar." (87 Ill. 2d R. 708(c).)[2] If the Committee declines to so certify, the applicant may request a formal hearing. Rule 9.

The applicant is entitled to notice of the date, time and place of such hearing, the matters adverse to him which have been disclosed to the Committee, and, if such matters were based in whole or in part upon statements from other persons, the names of such persons. (Rule 10.) At the hearing, the applicant is entitled to be represented by counsel (appointed, if necessary), to examine and cross-examine witnesses, to present evidence bearing on the matters before the Committee and his moral character, and for such purpose to make reasonable use of the Committee's subpoena powers. (Rule 10.) Hearings before the Committee are private unless the applicant concerned requests that they be made public. (87 Ill. 2d R. 709(b).) Information

---

[2]We note that by an amendment to Rule 708(c) made April 10, 1987, and effective August 1, 1987, upon certification by the Committee, an applicant "shall *** be admitted to the bar unless the court orders otherwise." (116 Ill. 2d R. 708(c).) This amendment to the rule has no bearing in the disposition of this appeal.

acquired by reason of membership on the Committee is confidential. Rule 13.

If, after the formal hearing, the Committee declines to certify the applicant, "[i]t shall file with the Board of Law Examiners a statement that it cannot so certify, together with a report of its findings and conclusions." (87 Ill. 2d R. 708(c).) An applicant who has availed himself of his full hearing rights before the Committee and who deems himself aggrieved by the determination of the Committee may petition the supreme court for relief. 87 Ill. 2d R. 708(d).

It is apparent from the foregoing review that the Character and Fitness Committee possesses most of the powers that distinguish a quasi-judicial body from one performing merely administrative functions. (*Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 419-20, 465 N.E.2d 1059.) The Committee has the power to exercise judgment and discretion; to hear and determine or to ascertain facts and decide; to examine witnesses, to compel the attendance of witnesses and to hear the litigation of issues on a hearing, as plaintiff concedes.[3] Courts have held that the existence of these powers in similar circumstances is indicative of a quasi-judicial body. See, *e.g., Mock v. Chicago, Rock Island & Pacific R.R. Co.* (8th Cir. 1972), 454 F.2d 131 (powers of National Railroad Adjustment Board including providing notice and written findings and conducting hearings make it a quasi-judicial body); *Astro Resources Corp. v. Ionics, Inc.* (S.D. Tex. 1983), 577 F. Supp. 446 (statements in letter from unsuccessful bidder on NASA procurement contract absolutely privileged because contracting officer exercised quasi-judicial powers when investigating and acting upon bid protest); *Park Knoll Associates v. Schmidt* (1982), 89 A.D.2d 164, 454 N.Y.S.2d 901, *rev'd on other grounds* (1983), 59 N.Y.2d 205, 451 N.E.2d 182, 464 N.Y.S.2d 424 (tenants are immune from suit for defamatory information contained in their application to the Division of Housing and Community Renewal because its proceedings involving investigation and witness testimony are quasi-judicial).

Asserting that the Character and Fitness Committee merely recommends applicants for admission to the bar, plaintiff argues that the Committee lacks the power to affect directly their rights. Plaintiff admits, however, that "the Committee's recommendation can indirectly and even profoundly [a]ffect the personal and property rights of Bar applicants." As noted below, the Committee's decision to certify an applicant for admission to the bar is conclusive. Although its refusal

---

[3]"Properly constituted committees have the power to investigate, question and determine fitness." *In re Martin-Trigona* (1973), 55 Ill. 2d 301, 305, 302 N.E.2d 68.

to certify an applicant is reviewable, "a tribunal need not be the ultimate arbiter of a party's rights for its proceedings to be protected by an absolute privilege." *Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 421, 465 N.E.2d 1059.

In concluding that the Equal Employment Opportunity Commission is a quasi-judicial body, the appellate court in *Thomas* found that the Commission possesses power to affect the rights of those who are subject to its investigation even though it does not have the power to resolve conclusively a claim of discrimination. (125 Ill. App. 3d 415, 420-21, 465 N.E.2d 1059.) And in *Allen v. Ali* (1982), 105 Ill. App. 3d 887, 890-91, 435 N.E.2d 167, the court stated that the Attorney Registration and Disciplinary Commission is a quasi-judicial body created by supreme court rule to administer attorney discipline and that communication with the Commission or any of its officially authorized agents is absolutely privileged. The court reached this conclusion although the Commission is empowered only to make recommendations for disciplinary action.

With respect to the power to make binding orders and judgments, we recognize that the Character and Fitness Committee's decision not to certify an applicant is reviewable by the Illinois Supreme Court. (87 Ill. 2d R. 708(d).) However, the scope of that review is narrow. The supreme court has repeatedly stated that "the exercise of discretion by a committee on character and fitness in its consideration of an applicant's fitness for admission to practice law in this State will not be reversed by this court unless certification has been arbitrarily refused." (*In re Ascher* (1980), 81 Ill. 2d 485, 498, 411 N.E.2d 1, citing *In re Latimer* (1957), 11 Ill. 2d 327, 330, 143 N.E.2d 20, *appeal dismissed* (1957), 355 U.S. 82, 2 L. Ed. 2d 111, 78 S. Ct. 153, and *In re Frank* (1920), 293 Ill. 263, 264, 127 N.E. 640.) More significantly, where, as here, the Committee does certify an applicant for admission, that action is not reviewable by either the Board of Law Examiners or the Illinois Supreme Court. (87 Ill. 2d R. 708(c).)[4] In effect, the Committee grants the license to practice, as plaintiff admitted at oral argument. The Committee, however, does not have the power to enforce its decisions or impose penalties.

To summarize, the Character and Fitness Committee possesses five of the six powers that distinguish a quasi-judicial body from one performing merely administrative functions: to exercise judgment and discretion; to hear and determine or ascertain facts and decide; to make binding orders and judgments (where it certifies applicants for

---

[4]See, however, Footnote 2, *supra*.

admission to the bar); to affect the personal or property rights of private persons; and to examine witnesses under oath, to compel the attendance of witnesses and to hear the litigation of issues in a hearing. (*Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 419-20, 465 N.E.2d 1059.) In our judgment, the possession of these powers marks the Character and Fitness Committee as a quasi-judicial body.

Important public policy considerations support the granting of an absolute privilege to communications with the Character and Fitness Committee. An applicant for admission to the bar must establish to the satisfaction of the Committee that he possesses the good moral character and general fitness required of an attorney to practice law. (*In re Ascher* (1980), 81 Ill. 2d 485, 498, 411 N.E.2d 1.) Because character and fitness committees "lack the personnel and other resources to conduct independent investigations of bar applicants, they are obliged to rely primarily on truthful answers by the applicants to committee questionnaires as a source of material information." (81 Ill. 2d 485, 499, 411 N.E.2d 1.) An essential source of such information is the applicant's former employers. The Committee's ability to obtain frank and candid evaluations of an applicant's "moral character, reputation and fitness for the practice of law" would be seriously jeopardized if employers were exposed to retaliatory libel actions by disgruntled applicants. We do not believe that a qualified privilege would provide adequate protection.

In holding that complaints to the Judicial Inquiry Board are absolutely privileged, the court in *Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652, 490 N.E.2d 1062, rejected the plaintiff's argument that a qualified privilege would suffice and stated that a complainant needs a shield giving protection from recrimination or retaliatory action which might have no merit. (141 Ill. App. 3d 652, 658-59, 490 N.E.2d 1062.) Complaints to both the Judicial Inquiry Board and the Attorney Registration and Disciplinary Commission are absolutely privileged. (141 Ill. App. 3d 652, 490 N.E.2d 1062; *Allen v. Ali* (1982), 105 Ill. App. 3d 887, 435 N.E.2d 167.) It would be inconsistent with the rationale of these decisions to accord a lesser privilege to communications with the Character and Fitness Committee.

In *Krumin v. Bruknes* (1930), 255 Ill. App. 503, the court held that affidavits made by defendant to the Naturalization Bureau of the Department of Labor concerning plaintiff, an applicant for citizenship, that he was a bootlegger, conducted a "fake" drug store, sold moonshine, was engaged in the illegal sale of intoxicating liquor, had abandoned his wife and had caused discord between affiant and affiant's

wife, were absolutely privileged. In reaching this conclusion the court stated:

"Good character is one of the chief qualifications of citizenship and upon the hearing [in naturalization proceedings] the possession of this attribute is perhaps the most important issue to be determined. Persons having relevant information should be encouraged to impart it and should be free to speak freely, unfettered by fear of being held to respond in damages. It is of vital importance to the perpetuity of our institutions that the gateway to citizenship be carefully guarded. This is the policy of the United States. This can be done only when communications touching applications for citizenship are protected as absolutely privileged. Any other rule would violate the spirit and purpose of our naturalization laws with deplorable results. Inevitably, in some cases this rule will produce hardships, if not wrong, to individuals. We apprehend the number of such instances, however, will be negligible ***. As against such infrequent and individual wrongs, the larger interests of the public must be paramount." 255 Ill. App. 503, 512.

In our judgment, good character is no less important an attribute of applicants for admission to the bar than it is of applicants for citizenship, and we believe that "[p]ersons having relevant information should be encouraged to impart it and should be free to speak freely, unfettered by fear of being held to respond in damages."

With plaintiff's consent, the Character and Fitness Committee solicited information from his former employers regarding his reputation and character and his fitness for the practice of law. Although plaintiff argues that his consent was not voluntary, he never challenged the Committee's authority to require him to sign the "AUTHORIZATION AND RELEASE" form.[5] Moreover, plaintiff fails to articulate how the circumstances surrounding the execution of the

---

[5]We seriously question whether such a challenge would have succeeded. The practice of law is a privilege, not a right, and in granting that privilege the supreme court may impose any reasonable conditions within its control. (*In re Anastaplo* (1954), 3 Ill. 2d 471, 482, 121 N.E.2d 826, *appeal dismissed* (1955), 348 U.S. 946, 99 L. Ed. 740, 75 S. Ct. 439.) Among other things, the granting of the privilege to practice law in Illinois is conditioned upon proof by the applicant of his good moral character and of his general fitness to practice law. (3 Ill. 2d 472, 482, 121 N.E.2d 826.) It is inconsistent with the privilege an applicant for admission seeks that he should be able to defeat pertinent inquiry into his ability to fulfill such conditions by refusing to consent to an investigation into his employment background. See generally *In re Anastaplo* (1954), 3 Ill. 2d 471, 482, 121 N.E.2d 826; *In re Martin-Trigona* (1973), 55 Ill. 2d 301, 305-06, 302 N.E.2d 68.

document have any bearing on the validity of that document or on the right of a third party to rely upon it in communicating with the Committee.

In *Bufalino v. Teller* (M.D. Pa. 1962), 209 F. Supp. 866, the court held that a communication by an attorney to the National Conference of Bar Examiners accusing the applicant of having Mafia connections enjoyed an absolute privilege because of the authorization and release signed by the applicant and because the information was furnished in response to the conference's request for information. The court stated that "[t]o place an attorney in the position that he would be subject to a libel action if he gave any information which was not laudatory of [the] applicant would render such inquiry nugatory." 209 F. Supp. 866, 870.

Finally, plaintiff argues that the allegedly defamatory statements were not entitled to the absolute privilege accorded to communications with quasi-judicial bodies because the statements were not obtained in response to a subpoena, they were not made under oath at a formal hearing, they were not transcribed and they were not subject to cross-examination. Plaintiff cites no authority in support of this proposition and we are aware of none.

In *Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 465 N.E.2d 1059, the court held that an absolute privilege applied to a charge of employment discrimination filed with the Equal Employment Opportunity Commission. The court approved of other decisions in which the privilege was applied to informal, unsworn communications with a quasi-judicial body. (See *Circus Circus Hotels, Inc. v. Witherspoon* (1983), 99 Nev. 56, 657 P.2d 101 (absolute statutory privilege attaches to employer's letter filed with Employment Security Department concerning former employee's claim for unemployment benefits); *Astro Resources Corp. v. Ionics, Inc.* (S.D. Tex. 1983), 577 F. Supp. 446 (statements in letter from unsuccessful bidder on NASA procurement contract absolutely privileged because contracting officer exercised quasi-judicial powers when investigating and acting upon bid protest).) It is also instructive to note that the absolute privilege accorded to statements made in the course of judicial proceedings extends to out-of-court communications between attorneys (*Libco Corp. v. Adams* (1981), 100 Ill. App. 3d 314, 426 N.E.2d 1130; *Dean v. Kirkland* (1939), 301 Ill. App. 495, 23 N.E.2d 180), and to communications between attorneys and their clients (*Weiler v. Stern* (1978), 67 Ill. App. 3d 179, 384 N.E.2d 762), so long as they pertain to proposed or pending litigation.

The defamatory statements attributed to defendants were made

in response to the Character and Fitness Committee's inquiry into plaintiff's "moral character, reputation and fitness for the practice of law." That inquiry was an integral part of the Committee's responsibility to determine fitness, which is a quasi-judicial function. The statements were absolutely privileged and the court properly dismissed with prejudice count I of plaintiff's amended complaint alleging defamation. Since plaintiff has not presented any independent basis for reversing the court's order dismissing count II, alleging intentional infliction of emotional distress, and count III, alleging civil conspiracy, we affirm their dismissal as well.

For the foregoing reasons, the order of the circuit court of Cook County dismissing with prejudice plaintiff's amended complaint is affirmed.

Affirmed.

PINCHAM and MURRAY, JJ., concur.