555 P.2d 315

**Application of Edward RONWIN to be admitted as a Member of the State Bar of Arizona.**

**No. SB–52–2.**

Supreme Court of Arizona,
In Banc.

July 6, 1976.

David M. Lurie, Phoenix, for petitioner.

Edward Ronwin, in pro per.

Donald Daughton, Phoenix, for Committee on Examinations and Admissions.

Dale Beck Furnish, Tempe, for amici curiae, Gilbert T. Venable, Stephen E. Lee, John P. Morris, Beatrice Moulton, and Richard C. Dahl.

GORDON, Justice.

The applicant, Edward Ronwin, filed this petition for review after a Special Committee on Examinations and Admissions appointed by this Court refused to recommend him for admission to the State Bar of Arizona on the ground that he "is not mentally able to engage in the active and continuous practice of the law."

Ronwin graduated from the Arizona State University College of Law in January of 1974. He took and failed the bar examination administered the following month. A petition for review of the grading of the examination papers filed with the Committee on Examinations and Admissions was denied. A similar petition subsequently filed in this Court was also denied.

On July 22, 1974, eight days before he was to retake the exam, the Committee on Examinations and Admissions informed Ronwin that he had not qualified for permission to take the test "in that the Committee is unable to make the requisite finding that you are mentally and physically able to engage in [the] active and continuous practice of law." A petition for a Writ of Special Action was filed by the applicant with this Court the next day. We conducted a hearing and declined to

take jurisdiction of the matter on July 30th.

On September 24, 1974, an order was entered by this Court appointing a Special Committee to conduct a formal hearing under Rule 28(c) XII D of the Rules of the Supreme Court for the sole purpose of determining whether Ronwin was mentally able to engage in the active and continuous practice of law. Following substantial discovery the hearing was held on January 6 and 7, 1975. On January 21st the seven member Committee issued the following findings:

"[T]he applicant suffers from an established personality disorder of a character and pattern which will persist in the event the applicant is admitted to the practice of law which

"(a) Causes him to be unreasonably suspicious that bad motives and intentions activate persons with whom he comes into contact and to unreasonably imagine that he is the object of unfair persecution by such persons and to act upon such imagined wrongs as if in fact sustained by known facts;

"(b) Causes him to make irresponsible and highly derogatory untrue public accusations and charges against persons in responsible positions which he knows or reasonably should know are without any factual basis or support;

"(c) Causes him to bring and pursue with great persistence groundless claims in court proceedings and otherwise even though he knows or should reasonably know such claims to be groundless, and that thereby others will be subjected to needless expense and concerns."

The Committee concluded that "because of this personality disorder applicant would probably be unable to properly represent and serve the interests of his clients * * * [and] will probably * * * bring and prosecute groundless claims and subject clients, parties, the Court and adversary counsel to groundless charges of misconduct and impropriety if his view of the merits of the claims he presented should be vigorously opposed and be found to be without merit by the Court."

Ronwin filed a Petition for Review of the Committee's findings in this Court on January 28, 1975, placing the case in its present posture. The applicant's subsequent motion seeking an order admitting him to the Bar or, in the alternative, permitting him to take the examination pending a determination of his petition for review was denied.

The practice of law is not a privilege but a right, conditioned solely upon the requirement that a person have the necessary mental, physical and moral qualifications. *Application of Klahr,* 102 Ariz. 529, 433 P.2d 977 (1967); *Application of Burke,* 87 Ariz. 336, 351 P.2d 169 (1960). This right "is neither greater nor less than the right to engage in other occupations, businesses or trades, for the right to seek and retain employment is shared by all equally and to be equal must be upon the same conditions." *Application of Levine,* 97 Ariz. 88, 397 P.2d 205 (1964). In Arizona, as a prerequisite to the admission to practice an applicant has the burden of establishing as required by Rule 28(c) IV (3) of the Rules of the Supreme Court that he is "mentally * * * able to engage in active and continuous practice of law." See *Application of Courtney,* 83 Ariz. 231, 319 P.2d 991 (1957). If the Committee believed in this case that there was doubt as to Ronwin's mental qualifications "its plain duty was to refuse to certify his name to this Court for admission, for the ultimate responsibility for the admittance to the practice of law lies in the members of the Court." *Application of Levine,* supra. See *Application of Walker,* 112 Ariz. 134, 539 P.2d 891 (1975). The Committee's task is often a difficult one as some of the concepts embodied in the Rules escape definition in the abstract. Because of this a petition for review concerning such a matter "must be judged on its own merits, and an *ad hoc* determination in each instance must be

made by the court." *Application of Klahr,* supra.

After a careful review of the record we have concluded that Ronwin has failed to demonstrate that he is mentally able to engage in the active and continuous practice of law. To survey in this opinion the allegations or criticisms made by various witnesses or the psychiatric and psychological testimony would unnecessarily inject comment on the character or reputation of persons other than the individual who is the focus of this case and would serve to heighten the extreme emotion with which the applicant and others view several of the incidents which were highlighted at the committee hearings. It would also discourage in the future the sort of candid and personal testimony which many people are naturally reluctant to give but which is necessary in order to make a competent evaluation of an applicant's qualifications.

In summary, there is significant expert testimony in the record to indicate that Ronwin has a "paranoid personality" which is characterized by hypersensitivity, rigidity, unwarranted suspicion, excessive self-importance and a tendency to blame others and ascribe evil motives to them. The ominous ramifications of his personality disorder can be seen in the testimony of two professors which indicates that on different occasions he became enraged during discussions of academic matters and made serious threats of physical violence toward certain individuals and, in two cases, their wives. The record reveals a continuing inability by the applicant to maintain normal interpersonal relationships with sharp conflict rather than cooperation a common result. This situation is particularly aggravated where Ronwin is the subject of criticism or views himself as the victim of an imagined or real injustice. While he may excel in other endeavors, he appears mentally unable to reasonably deal with the type of social interaction involved in dealing with clients, other members of the Bar and the public.

■ We believe that it is imperative that the term "mentally * * * able to engage in active and continuous practice of law" be construed to exclude persons whose long-standing personality traits indicate an obvious inability to get along with authority figures under situations of minor stress and conflict, whether or not these personality deficiencies rise to the level of medically recognized and categorized mental disorders.

■ The applicant's "irresponsible and highly derogatory untrue public accusations and charges against persons in responsible positions" referred to in ground "(b)" were mainly directed at administration officials at Arizona State University and appear to have resulted from an honest although probably misguided opinion of who was responsible for harassment he endured while a law student.[1] We must be

---

I. Graffiti such as "Rabbi Ronwin", "Ronwin is a Jew", "Jewish Dining Room" (on the bathroom stall) and other ethnic slurs were written on walls and notices at the law school. There is no indication in the record whether Ronwin is Jewish. The applicant's hypersensitivity and aggressiveness aggravated the normal repugnance an individual would feel as the brunt of such remarks. In a letter to the President of the University, Ronwin accused the dean of the law school of expressing an "attitude of malice" toward him as demonstrated by his failure to stop the graffiti and stated "[t]he activities of [the] Dean * * * sum to an astonishing and deliberate nonfeasance and malfeasance and were directly responsible for both my troubles at the school, which continued virtually unabated during my entire association, and for much of my current problems with the Bar." Other critical comments in the letter were directed toward a resident professor, two visiting professors and an acting dean of the law school during one semester that the permanent dean was on a sabbatical. Ronwin accused the acting dean of deliberately soliciting false memoranda containing derogatory comments concerning the applicant and of bringing "the memoranda to the Committee's attention with the object of destroying me or my chances to become a member of the Bar because of the boundless malice with which he operates * * *." In connection with a theft from his locker, the applicant stated the acting dean "used his office to protect a felon and effectively halt a criminal investigation because

cautious not to punish an individual for utterances which fall within the protections of the First and Fourteenth Amendments. See *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *New York Times Company v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L. Ed.2d 686 (1964); *Application of Levine* supra. However, the relationship of these accusations and charges to his feelings of persecution as set forth in paragraph (a) of the Committee's Findings is apparent to anyone who reads the full transcript of the proceedings in this matter.

■ We do not agree with ground "(c)" of the Committee's Findings, that Ronwin has in the past brought "with great persistence groundless claims in court proceedings and otherwise." We hesitate to fault the applicant for resorting to the legal system to express his grievances where, as in this case, there is credible evidence that the actions were brought with a good faith belief in their merit.[2]

Having agreed with the Special Committee after our independent analysis of the record that Ronwin is not mentally able under Rule 28(c) IV of the Rules of the Supreme Court to engage in the active and continuous practice of law, it is ordered that his application to be admitted as a member of the State Bar or, in the alternative, to take the bar examination, is denied.

STRUCKMEYER, V. C. J., HAYS, and HOLOHAN, JJ., and HENRY S. STEVENS, Judge, Retired, concurring.

Note: The Honorable JAMES DUKE CAMERON, Chief Justice, did not participate in the determination of this matter and the Honorable HENRY S. STEVENS, now a retired Judge of the Court of Appeals, was called to sit in this matter.

of that hatred [for me]." Ronwin demanded that both the acting dean and a professor be dismissed from the faculty.

2. At the hearing the applicant defended the filing of two lawsuits. The first was filed in 1969 with the California Fair Employment Practice Commission while the applicant was a lecturer at Fresno State College. Ronwin alleged he was a victim of reverse discrimination in hiring practices at the institution. The matter was eventually terminated when a default judgment was entered against the applicant. The second lawsuit was filed in 1972 against seven fellow students Ronwin felt were responsible for the graffiti and verbal harassment he was receiving at the law school. At the hearing the applicant gave a reason why each defendant was included in the suit.