667 P.2d 1281

**In the Matter of Edward RONWIN.**

**Nos. SB–52–8, SB–52–9.**

Supreme Court of Arizona,
En Banc.

July 6, 1983.

Edward Ronwin, in pro. per.

FELDMAN, Justice.

This application for admission to the Arizona Bar has a long, unhappy and complex history.

## HISTORY OF PROCEEDINGS

Edward Ronwin (Ronwin) graduated from the College of Law at Arizona State University in January of 1974. He took both the Arizona and Iowa bar examinations during that year. He passed in Iowa, but failed the Arizona examination. He was admitted to practice by the Iowa Supreme Court in June 1974 and is still a member in good standing of that bar.

Ronwin petitioned the Committee on Examinations and Admissions for review of the grading of his examination papers. That petition was denied, as was a similar petition subsequently filed in this court. Certiorari was then denied by the United States Supreme Court. *Ronwin v. Committee on Examinations and Admissions,* 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974). Ronwin petitioned to retake the bar examination at the July 1974 sitting. Permission was denied because the Committee on Examinations and Admissions refused to certify that he was "mentally and physically able to engage in active and continuous practice of law" as required by Rule 28(c)(IV), Arizona Rules of the Supreme Court, 17A A.R.S.[1] We then appointed a special committee to hold a formal evidentiary hearing regarding the allegations of mental unfitness. This hearing was conducted pursuant to Rule 28(c)(XII)(C). The special committee found that Ronwin suffered from a "personality disorder" which resulted in (a) unreasonable suspicions that persons who dealt with him and did not meet his desires were activated by bad motives and that he was, therefore, the "object of unfair persecution." As a result, the committee concluded that if admitted, Ronwin would "act upon such imagined wrongs" by: (b) making "irresponsible and highly derogatory untrue public accusations and charges against persons in responsible positions which he knows or reasonably should know are without any factual basis or support . . . ."; and (c) bringing and pursuing "with great persistence groundless claims in court proceedings and otherwise", thereby subjecting others to needless expense and concern. The committee decided that in representing others Ronwin would subject his clients, adversaries, opposing counsel and the court to "groundless charges of misconduct and impropriety" if his views regarding the law were opposed and not sustained by the court. On these bases, the committee found Ronwin was not

---

1. The rules of the supreme court will be referred to as Rule ____.

mentally fit for the practice of law and declined to recommend him for admission. Ronwin petitioned this court for review of that finding, seeking leave in the interim to take the Arizona bar examination. Permission to take the bar examination was denied.

After review of the record, we concluded that the committee had properly assessed Ronwin's personality problems, and that those problems would affect his ability to "reasonably deal with the type of social interaction" required in the practice of law. *Application of Ronwin (Ronwin I),* 113 Ariz. 357, 359, 555 P.2d 315, 317 (1976), *cert. denied,* 430 U.S. 907, 97 S.Ct. 1178, 51 L.Ed.2d 583 (1977). We concluded that finding (b) of the committee was sustained, and ordered that Ronwin not be admitted. We did not agree with the committee on ground (c) since we believed that Ronwin had a right to resort to the legal system to "express his grievances where, as in this case, there [was] credible evidence that the actions [filed by Ronwin] were brought with a good faith belief in their merit." *Id.* at 360, 555 P.2d at 318 (footnote omitted).

Ronwin applied for permission to take the bar examination in Arizona at various times between February 1977 and February 1980, and each application was denied. The current applications for admission, SB–52–8 and SB–52–9[2] were supplemented by Ronwin several times at the request of this court. In October of 1981, we ordered that Ronwin be permitted to take the February 1982 bar examination, and reserved the issue of his fitness. Ronwin failed a portion of the February 1982 bar examination, but passed the July 1982 examination.

For reasons which will become apparent later in this opinion, the current applications have not been referred again to the committee. The ultimate responsibility for admitting candidates for the practice of law is vested in this court. *Ronwin I,* 113 Ariz. at 358, 555 P.2d at 316; *Application of Levine,* 97 Ariz. 88, 91, 397 P.2d 205, 207 (1964); Rule 28(c)(XII)(F)(2). We have determined to discharge that responsibility directly in this case.

We permitted Ronwin to support his applications by a written report from a psychiatrist who had examined him in Iowa. Ronwin also agreed to submit to examination by a psychiatrist and a clinical psychologist appointed by this court. By subsequent order, we referred the question of fitness to the Honorable Paul LaPrade, a Judge of the Superior Court of the State of Arizona. Pursuant to the order of reference, Judge LaPrade was to act as a master, conduct a hearing and report to this court. Subsequently, Ronwin and counsel appointed by this court to aid the master in making a just determination stipulated to submit the issues to the master on the written record in SB–52–8 and SB–52–9, without an evidentiary hearing. The master's report was to be based upon the contents of the record in the two petitions, together with the written reports of the psychiatrists and psychologist.

Ronwin then moved for permission to withdraw the stipulation, contending that it limited the master to consideration of those matters in the files of SB–52–8 and SB–52–9 and had contemplated a decision within one week to ten days. Ronwin's motion for permission to withdraw from the stipulation was denied. The master's report was filed in this court on November 4, 1982. The master concluded that Ronwin was not mentally fit for the practice of law. In reaching this conclusion, however, the master went beyond the limits of the stipulation and considered certain pleadings and affidavits signed and filed by Ronwin in various cases in which he was plaintiff and had appeared pro se.[3] On Ronwin's objec-

---

**2.** SB–52–8 is the file containing matters relevant to Ronwin's application for permission to take the 1982 bar examination. As indicated, that permission was granted and Ronwin eventually passed the examination. SB–52–9 is the file relevant to Ronwin's present application for

admission in the event that he did pass the examination.

**3.** The caption and number of each of these cases were referred to in the records of SB–52–8 and SB–52–9, but Ronwin complained that his stipulation to waive an evidentiary

tion, we struck the extraneous matters from the master's report. Upon further consideration, however, we have concluded that because the master's report was based upon many evidentiary items which were not within the parameters of the submission by the parties, it would be better for us not to rely upon that report. Since we have the ultimate responsibility for determination of fact and law, *Levine,* 97 Ariz. at 92, 397 P.2d at 207, we have decided to make an independent review of the record without again referring the matter to a master. Rule 28(c)(XII)(F) contemplates such a procedure.

▮ As we stated in *Ronwin I, supra,* the practice of law is not a privilege; it is a right. While similar to the right to engage in other occupations, it is subject to regulation to ensure that those who engage in the practice of law have the necessary mental, physical and moral qualities required. *Id.* at 358, 555 P.2d at 316; *see also Schware v. Board of Bar Examiners of State of New Mexico,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). Thus, the applicant for admission "has the burden of establishing ... that he is 'mentally ... able to engage in active and continuous practice of law.'" *Ronwin I, supra.* Each case must be judged on its own merits "and an *ad hoc* determination in each instance must be made by the court." *Application of Klahr,* 102 Ariz. 529, 531, 433 P.2d 977, 979 (1967).

▮ We are therefore charged with the responsibility of making an independent review to determine whether the applicant is mentally fit for the practice of law. Unlike the master, our review is not curtailed by stipulation and may be as broad as allowed by law. Among other things, we may take judicial notice of such adjudicative facts as are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ariz.R. Evid. 201(b).

In this connection, we gave Ronwin notice by order dated April 27, 1983 that the

master's report would be stricken and that we would make an independent review of fact and law. We stated that our review of the facts would extend to matters established on the record of our files and the record of the files of the United States District Court for the District of Arizona in certain, specified cases. We allowed applicant to file a memorandum directed to this procedure and to the issues raised by the record referred to in our order of April 27. We also allowed applicant to submit by affidavit or offer of proof any factual matter which he wished us to consider. Applicant did file a document entitled "Motion Concerning Order of April 27, 1983" in response to our order.

## INDEPENDENT REVIEW

### The Issue

In conducting our review, we find the expert medical opinions instructive. The psychiatrist from Iowa, Dr. Taylor, reported that he "found no indication that [Ronwin] now suffers ... from any type of mental illness, mental disorder or mental defect." Acknowledging that applicant possessed personality traits "which might be termed unpleasant or abrasive by those adopting positions in opposition to those held by Ronwin," Dr. Taylor stated it was "*possible*" that such traits would not impair Ronwin's ability to competently practice law.

Both the psychiatrist and psychologist appointed by this court to make an independent examination found that Ronwin suffers from a "compulsive personality disorder" defined on Axis II of the DSM III of the American Psychiatric Association. The psychologist's opinion was that this disorder would "*not necessarily impair* [Ronwin's] capability to conform to the rules and ethical considerations of the American Bar Association." (Emphasis supplied.) The psychiatrist stated his opinion that Ronwin was "*capable of conforming* to the rules and ethics of the code of professional conduct."

---

hearing was based upon the agreement that the matter would be submitted "solely on the basis of the written [medical] reports ... and on the

contents of the record in SB–52–8 and SB–52–9 as it currently exists."

(Emphasis supplied.) Both doctors found that the compulsive personality disorder manifested itself in overzealousness in the pursuit of what Ronwin considered to be justice and was marked by paranoid attitudes, lack of flexibility, hypersensitivity, inability to compromise, perfectionism, obsessive preoccupation with details, suspiciousness and hostility.

We are aware that such traits are not exclusive to Ronwin and are found in the emotional makeup of many human beings. The question is whether these behavioral traits and the emotional problems which cause them are sufficient in magnitude and duration that they may be expected to affect the applicant's conduct as a lawyer and, to a significant degree, cause it to fall below acceptable standards. The issue thus is not merely capacity and capability, but also behavior. On the former issue, we must defer to the doctors and accept their findings that Ronwin is "capable." On the latter, we must examine the record to determine if it establishes that Ronwin's personality disorder impairs his conduct to such a degree that he is not mentally able to engage in the practice of law.

### The Record

Following the decision in *Ronwin I,* Ronwin commenced a series of legal actions against various members of the Arizona State Bar.[4] The basis of these actions was Ronwin's belief that there was a conspiracy to prevent his admission to the Arizona Bar. In *Ronwin v. Daughton,*[5] Ronwin brought a civil rights action (see 42 U.S.C. § 1981 et seq.) against all members of the special committee appointed by this court to hold the evidentiary hearing regarding his mental ability to practice law. In addition, he included as defendants those attorneys who had represented the state bar in the proceedings before the committee, his own at-

torney, and several of the witnesses who testified, including the dean and assistant dean of the law school, both of whom had testified in his behalf. In *Ronwin v. Segal,* he brought a civil rights action against members of this court's Committee on Character and Fitness, formerly a part of the Committee on Examinations and Admissions. In *Ronwin v. State Bar of Arizona,* he brought an antitrust action against members of the Supreme Court Committee on Examinations and Admissions. In *Ronwin v. Gage,* applicant filed a third civil rights action against the members of an Arizona State Bar Administrative Committee, joining the members of this court. In *Ronwin v. von Ammon (von Ammon I),* applicant brought a civil rights action against the attorneys who had represented the Arizona State Bar in several of the previous actions, joining in the process his former attorney, the members of this court and two judges of the United States District Court for the District of Arizona. In *Ronwin v. von Ammon (von Ammon II),* applicant brought a fifth civil rights action against many of the same defendants previously sued. In addition, Ronwin named a third federal judge, the Clerk of the United States District Court and an Assistant United States Attorney as defendants. The members of this court were also joined as defendants. In *Ronwin v. Shapiro,* Ronwin commenced an action against a law student at the University of Arizona who had written a casenote on *Ronwin I.* In this action, one of the editors of the law review and the members of the Arizona Board of Regents were also named as defendants. This list does not exhaust the actions Ronwin has filed in response to the denial of his application for admission to the Arizona Bar.

■ We assume, *arguendo,* that much of this may have been precipitated by the religious harassment to which Ronwin

---

4. Under Ariz.R.Evid. 201(b), we take notice of the contents and disposition of the file in each of the cases referenced in this opinion. We take notice that the cases exist, that allegations are made, etc. We cannot and do not take notice of the truth or falsity of specific allegations *except* as established by final judgment.

5. Information pertaining to all actions filed by Ronwin and mentioned in this opinion will be found in Appendix A to this opinion.

alleges he was subjected during the years 1972–1974 at the hands of some students in the College of Law at Arizona State University. *See Ronwin I,* 113 Ariz. at 359, 555 P.2d at 317. Outrage over this certainly would be an appropriate reaction; given Ronwin's personality traits as described in the psychological reports, it is easy to understand why Ronwin's reaction exceeded outrage. Lawyers certainly have the right to become outraged and to resort to litigation when they have a good-faith belief that they have been wronged, but they do not have the right to file actions or commence proceedings which are vexatious or harassing in nature. *See In re Martin-Trigona,* 55 Ill.2d 301, 308–10, 302 N.E.2d 68, 72–73 (1973); *see also Matter of Wetzel,* 118 Ariz. 33, 35, 574 P.2d 826, 828 (1979). Nor do lawyers have the right to behave inappropriately while acting as lawyers, even if they are representing themselves. *See In re Martin-Trigona, supra; In re Mezzacca,* 67 N.J. 387, 389, 340 A.2d 658, 659 (1975).

These principles are not limited to case law. Arizona has adopted, with some modifications, the Model Code of Professional Responsibility. Rule 29(a). DR 7–106(C)(6) states that a lawyer shall not "[e]ngage in undignified or discourteous conduct which is degrading to a tribunal." DR 8–102(B) states that a "lawyer shall not knowingly make false accusations against a judge or other adjudicatory officer." Ariz.R.Civ.P. 11 also forbids inserting "scandalous or indecent" matters in pleadings and requires a belief in the existence of good grounds to support all allegations, with provision for disciplinary action where appropriate. Implicit in these rules is the requirement that lawyers exercise restraint in language and deed while acting as lawyers, particularly in relation to litigation. *See* Model Code of Professional Responsibility EC 7–36, 7–37, 7–38 (1980). The rules are explicit on the question of litigation. A lawyer "shall not" file actions, assert positions or take other action on behalf of clients when he or she knows "or *when it is obvious* that such action would serve merely to harass or maliciously injure another." DR 7–102(A)(1) (emphasis supplied). Nor should they file

claims or actions unless the case is supported by law or tenable argument. *Id.* (A)(2). What lawyers cannot do for clients, they cannot do for themselves. *Matter of Wetzel, supra.* Violation of the foregoing requirements is grounds for denial of admission. *In re Martin-Trigona, supra; Application of Feingold,* 296 A.2d 492, 500 (Me.1972).

From examination of the pleadings and affidavits prepared, signed and filed by Ronwin in our files and in the various federal court actions, it is apparent that applicant's personality disorder affects his conduct. With neither care nor caution, and restrained only by the outer limits of his intense anger, Ronwin has filled his pleadings with allegations of serious misconduct against the willing and unwilling participants in the proceedings which have led him to his present plight. These are not allegations of legal error, but, rather, accusations of knowing misconduct, plus misfeasance in office. In *von Ammon II,* Ronwin accuses the dean and assistant dean of the law school not only of tolerating anti-Semitic behavior, but also of knowingly participating in an "engineered fraud" to keep Ronwin out of the bar by sending Ronwin to a lawyer who would participate in "rigging" the hearing before the Special Committee. Ronwin alleges that a motion for security for costs filed by the defendants in one of the district court actions was granted because the judge was manipulated by the defendants' lawyers who were friends of the judge; for that reason, he alleges, the district court judge "knowingly tolerated criminal behavior" by those lawyers. He alleges further that this supposedly occurred because the Clerk of the United States District Court had joined the conspiracy against Ronwin and had intentionally altered procedures in the Clerk's office so that the case could be assigned to a district court judge who was friendly toward the lawyers representing the defendants. Ronwin alleges that an Assistant United States Attorney for the District of Arizona disregarded his duty by defending the federal judge instead of prosecuting him. In *von*

*Ammon I,* we are told that a different federal judge knowingly tolerated illegal activity by attorneys; this allegedly occurred as a result of unlawful conduct by members of the Arizona State Bar who had influence over both the state and federal judiciary and engaged in a criminal and fraudulent process of manipulating court decisions. In *Ronwin v. Gage,* state bar counsel, committee chairmen and members of state bar committees are all accused of participating in an engineered sham and fraud. Lawyers in the various proceedings are accused of having committed perjury, of suborning witnesses, making fraudulent allegations and engaging in a conspiracy against Ronwin. Ronwin's counsel in a previous case is accused of having joined the conspiracy to violate Ronwin's rights. A list of these accusations could go on ad infinitum. The true flavor, however, can only come from Ronwin's words; examples are quoted in the Appendix B.

Ronwin's pleadings in the United States District Court touch upon many if not most District Court Judges with whom he came in contact, including a visiting judge from the Southern District of California. The Clerk, Assistant Clerk and members of the Office of the United States Attorney are accused of involvement in the conspiracy. An Assistant United States Attorney was sued on the allegation of having joined the conspiracy by refusing Ronwin's request to prosecute a district judge who had allegedly acted illegally by knowingly tolerating the acts of applicant's attorney.

The record in our own court is similar. The decision in *Ronwin I* is alleged to have been "based on an engineered fraud and collusion by several members of the bar." In commenting on footnote 1 of *Ronwin I,* applicant states that it sets "an anti-semitic standard" which is that "if an applicant for admittance . . . becomes hypersensitive and aggressive against anti-semiticism that applicant becomes disqualified. . . ."[6] In a complete manifestation of lack of perspec-

tive, Ronwin compares his situation to that of the European Jews whose fate in the holocaust was sealed by the world's diplomats in 1938 at the conference at Evian-les-Bains. The dean of the law school at Arizona State University is described as "that incompetent liar and fraud." The foregoing examples are taken from the first five pages of Ronwin's Motion to Rehear in *Ronwin I;* this was filed six years after the decision became final and is part of the file in SB–52–9. In other pleadings in the file, Ronwin accuses the clerk of this court of intentional and knowing destruction of part of the record in this case.

The examples cited suffice to establish that Ronwin's reaction to adversity manifests itself in behavior which is grossly improper for a lawyer and which cannot be tolerated. This conclusion does not evince a lack of toleration for Ronwin; it simply acknowledges that we can make no special rule for Ronwin. What is permitted Ronwin is necessarily permitted all other members of our bar. Habitual filing of actions against adjudicatory officers, witnesses and opposing counsel is both vexatious and harassing. Worse, it is a tactic calculated to intimidate. It cannot be tolerated unless we are willing to surrender reason to those whose conduct is uninhibited by reality and civility. Adjudication of facts and resolution of legal disputes cannot be properly accomplished in the absence of restraint and civilized behavior by lawyers. Care with words and respect for courts and one's adversaries is a necessity, not because lawyers and judges are without fault, but because trial by combat long ago proved unsatisfactory.

We agree with the reasoning of the Maine Supreme Court in *Application of Feingold, supra:*

> The efficient and orderly administration of justice cannot be successfully carried on if we allow attorneys to engage in unwarranted attacks on the

---

**6.** The footnote in question actually states that applicant's hypersensitivity and aggressiveness (as mentioned in the psychological reports) aggravated the normal repugnance "[which] an

individual would feel as the brunt of such remarks." 113 Ariz. at 359 n. 1, 555 P.2d at 317 n. 1.

court, opposing counsel or the jury. Such tactics seriously lower the public respect for both the Court and the Bar. It is the duty of an attorney to present his case in an orderly fashion and not to engage in conduct repugnant to the just determination of the issues in controversy. Turbulent, intemperate or irresponsible behavior is a proper basis for the denial of admission to the bar.

296 A.2d at 500, citing *In re Latimer,* 11 Ill.2d 327, 143 N.E.2d 20 (1957); *Ex Parte Keeley,* 189 P. 885 (Or.1920). *See also State v. Turner,* 217 Kan. 574, 538 P.2d 966 (1975); *In re McAlevy,* 69 N.J. 349, 354 A.2d 289 (1976).

### THE FIRST AMENDMENT

When questioned by members of this court in oral argument, Ronwin demonstrated a sincere belief in his right to behave in the manner described above. He contends that he has a first amendment right to speak and write as he wishes and to say anything which he believes to be true. This may be true, but we believe that any such absolute first amendment right must be exercised somewhere other than the courtroom.

We do not refuse admission because of an applicant's beliefs or an applicant's exercise of the right of free speech. We long ago crossed that bridge in *Application of Levine, supra.* In *Levine,* the committee recommended that admission be denied because it believed that the applicant did "not possess the sense of public responsibility which a lawyer should have" as evidenced by the fact that the applicant had publicly criticized the Federal Bureau of Investigation and its Director, J. Edgar Hoover. *Id.* 97 Ariz. at 90, 397 P.2d at 208. We ordered that the applicant be admitted. Writing for a unanimous court, Justice Struckmeyer quoted the following language from the United States Supreme Court's opinion in *New York Times Company v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964):

[W]e consider this case against the background of profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.

*Id.* 97 Ariz. at 97, 397 P.2d at 211. Justice Struckmeyer concluded:

[N]o rule or principle of law compels the critic of official conduct in his utterances, public or private, to guarantee absolutely the truth of all his factual expressions, certainly not on the chance that he will be barred from his profession or vocation in case the utterances are later found to be erroneous.

*Id.*

There is no inconsistency between our holding in *Levine* and the views expressed today. *Levine's* alleged transgressions, if criticism of a federal agency and its director can be considered as such, involved speaking his mind and writing his thoughts in a non-judicial forum. Public entities and their officers are subject to criticism, pleasant or unpleasant, whether based on fact or belief. In judicial proceedings, however, lawyers are required to show both accuracy and restraint; statements should not be made absent a basis in fact and law. We acknowledge, *arguendo,* that applicant believes he is the victim of a conspiracy which encompasses this court, most of the federal bench, the organized bar, the bar committees and the lawyers who have participated in the various cases. This is the recurring theme in the civil rights actions which Ronwin filed. We think, however, that Ronwin's sincere belief in this supposed, wide-ranging conspiracy against him is not all that is required for the practice of law. Belief unrelated to reason is a hallmark of fanaticism, zealotry or paranoia rather than reasoned advocacy. The practice of law requires the ability to discriminate between fact and faith, evidence and imagination, reality and hallucination. Further, epithets, verbal abuse, unfounded accusations and the like have no place in legal proceedings. While occasional lapses in decorum are usually overlooked, Ronwin's transgres-

sions exceed occasional anger or loss of control. They form a pattern and a way of life which, on this record, appears to be applicant's normal reaction to personal or professional adversity. *See* Casenote, *Admission to the Bar: Mental Fitness Requirements in Arizona,* 19 Ariz.L.Rev. 672, 680 (1977).

Thus, we agree with the reasoning of the Illinois Supreme Court in *In re Martin-Trigona, supra:*

> Petitioner contends that [his statements are] protected by the first amendment's freedom of speech provision .... Thus, while he concedes these communications are unusual and forceful, he maintains that no action may be taken against him. The question presented is not the scope of petitioner's rights under the first amendment but whether his propensity to unreasonably react against anyone whom he believes opposes him reveals his lack of responsibility, which renders him unfit to practice law.

*Id.* 55 Ill.2d at 308, 302 N.E.2d at 72.

■ The profession's insistence that counsel show restraint, self-discipline and a sense of reality in dealing with courts, other counsel, witnesses and adversaries is more than insistence on good manners. It is based on the knowledge that civilized, rational behavior is essential if the judicial system is to perform its function. Absent this, any judicial proceeding is likely to degenerate into verbal free-for-all and some, no doubt, into physical combat. Thus, Ronwin's behavior does not present the question of free speech, but of habitual unreasonable reaction to adverse rulings. It is conduct of a type not to be permitted

of a lawyer when acting as a lawyer. What cannot be permitted in lawyers, cannot be tolerated in those applying for admission as lawyers. *Id.* at 310, 302 N.E.2d at 73.

## EVIDENTIARY HEARING

Ronwin demands an evidentiary hearing at which he would present evidence in an attempt to establish his grounds to believe in the truth of each of the many allegations and charges which he has made against judges, lawyers, clerks, committee members, etc. If the truth or his belief in the truth of each of these allegations were of importance to this decision, due process would entitle Ronwin to such a hearing. We believe, however, that an evidentiary hearing is unnecessary and inappropriate for the following reasons:

First, in his pleading entitled "Motion Concerning Order of April 27, 1983," Ronwin requests that we review previous medical reports filed in SB–52–2 and 52–3, as well as the testimony given by Dr. Taylor before the Iowa Supreme Court in 1977 and the reports of Drs. Barnes, Gray and Tuchler. All of this material is more than six years old and, for that reason, is not particularly helpful with respect to Ronwin's present situation. In any event, we do not believe that any of this material conflicts [7] with the more recent information from Dr. Taylor and from the psychiatrist and psychologist who examined Ronwin in these proceedings.

■ Second, we will not deny an applicant admission merely because he or she has filed legal actions accusing this court and the bar of violations of the applicant's civil

---

[7]. For instance, in his report of December 23, 1974, Dr. Gray concluded that:

> There is no evidence that Dr. Ronwin is suffering from any organic mental illness, functional psychosis, or severe psychoneuroses. There is some evidence to support a diagnosis of a personality disorder but such categories are blurred at best and are variously diagnosed by independent examiners.
> While Dr. Ronwin possesses traits that may engender negative reactions in some people who deal with him they are not of sufficient degree to warrant excluding him from practicing his profession on *psychiatric grounds.*

(Emphasis supplied.)·

> Dr. Barnes, on November 19, 1974, described applicant's personality in great detail, preferring "to avoid the use of diagnostic terms." Without the use of labels, Dr. Barnes described Ronwin's personality at length. His assessment is set forth in Appendix C. While we should not rely on that assessment, and do not because of its age, Ronwin has asked us to consider it, and it does, indeed, indicate that the problems which are with him today are of long standing duration.

rights or of the law. We will deny admission where, years after *Ronwin I* became final, applicant has refused to accept the decision and has continued to file vexatious actions, almost none of which was based on sound legal theory and most of which indicate that applicant's emotions have overcome his sense of proportion and his knowledge of the law. We reach this conclusion about the actions filed by Ronwin from the disposition of each case as shown in the files of the Clerk of the United States District Court for the District of Arizona. (See Appendix A, indicating disposition of each of the actions.)

Third, even if Ronwin had grounds to sue some members of the bar and bench for misconduct, the accusations can and should be made without vilification and use of provocative language. It is, for example, required and possible to plead a cause of action for violation of civil rights without making the allegation that the defendant is an "incompetent liar and fraud." *See In re Martin-Trigona, supra.* It is possible to allege conspiracy to violate civil rights or antitrust law without applying similar epithets.

■ Fourth, we do not believe that a lawyer has a right to use the legal process for the purpose of harassing those who act contrary to his wishes or offend him by failing to agree with his viewpoint. We find, for instance, the action which Ronwin brought against the author of the casenote in the Arizona Law Review, the editor and the board of regents to be harassing in nature and wholly without legal or procedural merit. This finding is based upon our reading of *Ronwin I,* the casenote and the decision in *Ronwin v. Shapiro,* 657 F.2d 1071, 1075–76 (9th Cir.1981).

Fifth, we find Ronwin's use of language with regard to the federal bench and the clerk's office wholly inappropriate and demonstrative of a lack of respect for the judiciary.

Sixth, in our order of April 27, 1983, we allowed Ronwin to submit by affidavit or offer or proof any factual matter which he deemed relevant. Except for the additional medical reports, which we have now considered, he refused to submit such information.

Finally, the right to an evidentiary hearing must fall once the essential nature of the barrage of Ronwin's allegations is appreciated. Ronwin does not merely complain that a specific witness, lawyer, judge, clerk or officer acted improperly or illegally. The essence of his complaints, when viewed in their totality, is both implicitly and explicitly that judges, lawyers, court officers and others have engaged in a conspiracy to deprive him of his right to practice law. The essence of the factual question urged by Ronwin is not whether a particular judge or particular lawyer acted incorrectly—indeed much of this is foreclosed by the finality of *Ronwin I*—but, rather, that all these acts were part of a conspiracy against him. It is on this fundamental question that he demands a right to present evidence, and it is primarily on this fundamental question that we now deny him a factual hearing.

If applicant is entitled to an evidentiary hearing on the fundamental, ultimate proposition that bench and bar are involved in a conspiracy devoted to his destruction, it must be in a forum other than ours. We cannot, for instance, take evidence on our own integrity; we do not propose to hold a wide-ranging inquiry on the integrity and honesty of the Judges of the United States District Court for the District of Arizona, the attorneys in the United States Attorney's Office for the District of Arizona, the Clerk of this court, the Clerk of the United States District Court, their deputies, the Arizona Bar, the College of Law, etc., ad infinitum.

### RECUSAL PROBLEMS

■ Yet another problem arises. One member of this court recused himself after oral argument because he felt too personally involved in the case to participate in the decision. That leaves four members of this court. Each has been made a defendant by Ronwin in various

actions.[8] If we are to recuse ourselves simply because we have been sued by the applicant, then who is left to decide this case? As the Ninth Circuit stated: " '[A] judge is not disqualified merely because a litigant sues or threatens to sue him.' Such an easy method for obtaining disqualification should not be encouraged or allowed." *Ronwin v. State Bar of Arizona,* 686 F.2d at 701, *quoting United States v. Grismore,* 564 F.2d 929, 933 (10th Cir.1977); *see also Smith v. Smith,* 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (App.1977). We agree; the mere fact that a judge has been sued by reason of his rulings in a case does not require recusal. Nor can the fact that all judges in the court have been sued require recusal. To honor such a technique would be to put the weapon of disqualification in the hands of the most unscrupulous.

## CONCLUSION

■ Ronwin has not established that he is mentally fit to practice law. Manifestations of improper conduct include the filing of unwarranted legal actions against numerous individuals connected with Ronwin's unhappy experience in applying for admission to the Arizona Bar. While we indicated in *Ronwin I* that we hesitated to fault the applicant for bringing legal actions which he believed were well founded, we must conclude from the number of actions, from their disposition, from filings against persons so peripherally involved (for example, the Assistant United States Attorney, the author of the casenote in the Arizona Law Review, the Arizona Board of Regents and Mr. von Ammon[9]) and from the language used, that applicant has acted and will continue to act in an irresponsible manner when he fails to gain his objectives. The refusal to accept the finality of *Ronwin I,* followed by the filing of unwarranted, vexatious, and harassing actions constitutes

grounds for denial of admission. We conclude further that applicant's use of intemperate, provocatory language and epithets; his lack of control, restraint and civility; and his custom of vilifying those who oppose him are all improper conduct for an attorney and constitute grounds for denial of admission. We have previously remarked on such conduct in the following words:

> While the record does not clarify whether this incapacity [to act in a professional manner] results from respondent's ignorance of certain rules governing the conduct of attorneys in Arizona, or from his emotional inability or philosophical unwillingness to adjust his conduct accordingly, his conduct and attitude demonstrate that he is currently unfit to practice law.

*Matter of Wetzel,* 118 Ariz. at 36, 574 P.2d at 829 (1978).

The record overwhelmingly establishes that Ronwin's personality traits result in behavior which demonstrates a lack of "qualities of responsibility, candor, fairness, self-restraint, objectivity and respect for the judicial system which are necessary adjuncts to the orderly administration of justice." *In re Martin-Trigona,* 55 Ill.2d at 312, 302 N.E.2d at 741. After review of these problems, we hold that applicant is not mentally able to engage in the practice of law and should not be admitted to the bar. Therefore, the application for admission is denied. Applicant will be permitted to reapply when and if he can establish that he is able to control his conduct in such a manner that the bar and bench will have some assurance that his behavior will conform to that which is expected of lawyers in our system of justice.

HOLOHAN, C.J., and HAYS and CAMERON, JJ., concur.

---

8. We note that the members of this court and the attorneys who have acted in its behalf have again been named defendants in an action filed by Ronwin in the United States District Court for the District of Arizona, No. CIV–83–1036 PHX–CLH, filed June 6, 1983.

9. Mr. von Ammon is, perhaps, not peripherally involved. He is a respected member of the

Arizona Bar and therefore was asked by this court to serve as counsel for the State Bar, this court and its committees. The cases in which Mr. von Ammon agreed to serve are not pleasant litigation. We doubt, however, that he expected that as a result of serving this court and the bar he and members of his firm would be made defendants in multiple litigation.

Note: Vice Chief Justice FRANK X. GOR-DON, Jr., having recused himself, did not participate in the determination of this matter.

## APPENDIX A

*Ronwin v. Daughton,* No. CIV–76–872 PHX–WPC (D.Ariz., filed November 26, 1976). Complaint dismissed March 4, 1977 as to all defendants, based on grounds of lack of subject matter jurisdiction, no federal question presented, res judicata and judicial immunity; *aff'd* 605 F.2d 563 (9th Cir.1979).

*Ronwin v. Segal,* No. CIV–76–924 PHX–WPC/MLR (D.Ariz., filed December 13, 1976). Complaint dismissed June 6, 1977; *aff'd* 634 F.2d 636 (9th Cir.1980).

*Ronwin v. State Bar of Arizona,* No. CIV–78–193 PHX–WPC/MLR (D.Ariz., filed March 13, 1978). Antitrust action dismissed October 12, 1979; *aff'd in part, rev'd in part and remanded,* 686 F.2d 692 (9th Cir.1982). Ninth Circuit held examination and admission practices do not fall within "state action" immunity to antitrust laws; *cert. granted,* —— U.S. ——, 103 S.Ct. 2084, 77 L.Ed.2d 296 (U.S.1983).

*Ronwin v. Gage,* No. CIV–78–214 PHX–WPC/MLR (D.Ariz., filed March 20, 1978). Summary judgment granted defendants October 12, 1979 on numerous grounds, including failure to state a claim, judicial immunity, lack of jurisdiction, res judicata and collateral estoppel.

*Ronwin v. von Ammon (von Ammon I),* No. CIV–79–175 PHX–WEC/CAM (D.Ariz., filed March 6, 1979). Dismissed May 21, 1979 as to District Court Judges on grounds of judicial immunity and consequent failure to state a claim; dismissed July 19, 1980 as to remaining defendants for failure to state a claim.

*Ronwin v. von Ammon (von Ammon II),* No. CIV–80–289 PHX–CAM (D.Ariz., filed April 18, 1980). Dismissed July 18, 1980 as to District Court Judges because action against them was "totally frivolous and vexatious," and as to numerous other defendants for failure to state a claim; dis-missed January 28, 1981 as to Clerk of District Court and United States Attorney because action was "frivolous, vexatious and failed to state a claim," and as to Supreme Court Justices because there was no credible evidence that they had participated in an illicit conspiracy and the court lacked subject matter jurisdiction. Attorneys' fees were awarded to some of the defendants.

*von Ammon I* and *von Ammon II* were consolidated on appeal and *aff'd* 688 F.2d 848 (9th Cir.1982).

*Ronwin v. Shapiro,* No. CIV–79–84 TUC–MAR (D.Ariz., filed March 29, 1979). Dismissed defamation action January 25, 1980; *aff'd* 657 F.2d 1071 (9th Cir.1981). Ninth Circuit affirmed dismissal of action against the Arizona Board of Regents and dismissed action as to author and editor under the privilege for fair report of judicial proceedings.

## APPENDIX B

In a letter dated May 23, 1981, to the Chief Judge of the United States District Court for the District of Arizona, Ronwin commented on the proceedings in federal court in both *von Ammon* cases. A copy of that letter was sent to this court and is part of the file in SB–52–9. In commenting upon the rebuttal argument of counsel for the state bar to Ronwin's charges that a witness had lied, Ronwin had the following comments for the Chief Judge:

On p. 22, . . . of the item attached hereto, [counsel for state bar] assures you and your Court, sitting in the hearings on July 7/8, 1980, that:

"... The charges [that [the witness] lied under oath in his testimony before the Special Committee of the Arizona Supreme Court ... and in his deposition in Civ. 78–214 PHX in this Court] are completely unjustified and totally unforgiveable .."

From the material enclosed, it is beyond question that [counsel] knowingly lies. [Counsel] has done so on other occasions. . . .

That [counsel] lies in his advocacy on behalf of the State Bar of Arizona and on behalf of the Arizona Supreme Court members—keepers of the ethical conscience of the Arizona legal community—is scandalous. But that he deliberately lies in your Court in an official proceeding is outrageous in the extreme.

You had sufficient evidence before you to see the plain truth: [The witness] lies under oath; [counsel] was privy, indeed, present at those episodes . . . and then [counsel] knowingly and wilfully lied in your Court about whether [the witness] lies in his testimony. Why did you tolerate [counsel's] lie? And, how does such lying merit an award of attorney's fees to [counsel], and his helper, . . . and the Defendants who he represents?

[Counsel] states, p. 22, . . . attached item:

".. it would be cruel and inhuman punishment to require [the witness] to submit again to the kind of treatment that he has been previously treated to by Plaintiff in examination,"

which is another fraud by [counsel], who well knows that the "treatment" to which Plaintiff subjected [the witness] was to expose [the witness'] perjury and incompetence as the material herein proves; and, [counsel] well knows that the "cruel and inhuman punishment" is to subject a man of my learning and demonstrated ability in the practice of law to the anti-semitic outrage and abuse to which I have been subjected by the criminal scoundrels, liars and frauds like [counsel and several attorneys] and their helpers. . . .

[Counsel's] lie about [the witness] is only one of many he has proffered to your Court whether presided over by you or by other judges. Why, as with [a District Court Judge's] refusal to take action against [an attorney] and [an attorney] for their outrage, is the Federal District Court in Arizona being used to protect these criminals?

I would like to have your response to my questions. I believe that you were not appointed to protect the hoodlums who have taken control of the Arizona State Bar; and, if you cannot apply the law without regard to the position or alleged reputation of those who come before you then you ought to resign.

## APPENDIX C

PSYCHIATRIC EVALUATION BY ROBERT H. BARNES, M.D., NOVEMBER 19, 1974

My descriptive characterization of the subject is as follows:

1. He is an extremely sensitive and insecure individual in his interpersonal relationships.

2. He is agressive [sic], doggedly determined and obsessively preoccupied with actions he feels are directed against him. This may well be an attempt to overcompensate for his insecurity in interpersonal relationships.

3. He expresses an extremely high evaluation of his own abilities. This is certainly in part related to reality—he is very bright, well informed over a wide area of data and is a hard driving worker. Again, it may in part be an overcompensation for interpersonal insecurity.

4. He has little tolerance for individuals who disagree with him and has no hesitancy in being very outspoken in his views.

5. At times he appears to be very self-righteous, single minded and somewhat grandiose in his evaluation of the importance of affairs involving his activities in his personal life.

6. He is often quite secretive about his personal affairs, although whether this can best be described as representing a general suspiciousness of others and their motives or a life long tendency to keep his own counsel is unclear. It would appear, however, that the former is the case—i.e. a general suspiciousness is often involved.

7. He is not a man of personal violence but does aggressively react to what he considers as attacks, both verbally and by recourse to various institutional actions, including legal actions.

8. His approach to many problems is highly technical, "scientific," or legalistic, which gives the appearance at times of concreteness and compartmentalization in his thinking. This may also appear to others as a hostile, suspicious or very circumscribed and guarded response to their questions and general communications. This would tend to produce in many people a negative interpersonal reaction. This is probably also another factor in making it difficult for him to pass off a casual remark or question with an equally casual or humorous response. This in turn would lead to potential verbal confrontations not anticipated by the other person or persons.

9. Many of the above characteristics would be expected to lead to animosity and counter hostility, as well as feelings of jealousy and other resentments in many associates and colleagues. His natural aggressiveness and interpersonal discomfort in many social situations would in turn lead to his overreacting and thus, a vicious cycle of negative interpersonal relationships would be set up.

RECOMMENDATIONS:

I would predict this man would often provoke many negative responses in some of those in contact with him, both colleagues and clients and that he might well resort to legal actions on many occasions when others avoid them. He certainly might be a source of time consuming arguments and litigations on occasions.

On the other hand, he has many assets that would make me predict adequate functioning in many professional roles. He is well informed, intellectually bright, honest to the extent that he will commit himself and highly motivated and determined to achieve goals which he selects as being of significance. I cannot say that his judgment in all situations and occasions would be objective or that his emotional reactions and biases would not at times color his objectivity. However, I do not see the characteristics I have outlined in the previous section as being of a degree that would allow me to recommend that he be excluded from the right to practice a profession for which he has been adequately trained.