STEVEN R. ZIELINSKI, Plaintiff-Appellant, v. RICHARD SCHMALBECK *et al.*, Defendants-Appellees (Jerrold H. Stocks, Appellant).

Fourth District    No. 4—94—0484

Argued November 9, 1994.—Opinion filed February 17, 1995.

Jerrold H. Stocks (argued), of Winters, Featherstun, Gaumer, Kenney, Postlewait & Stock, of Decatur, for appellants.

Michael R. Cornyn (argued), of Thomas, Mamer & Haughey, of Champaign, for appellees Richard Schmalbeck and Gerard V. Bradley.

Carrie K. Huff (argued), of Mayer, Brown & Platt, of Chicago, for appellee Robert Barry.

John Panegasser (argued), of Caluwaert & Panegasser, of Elmhurst, for appellee Jeanne E. Galvin.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Steven Zielinski filed a 42-page, 12-count complaint in the circuit court of Champaign County, listing the following as defendants: Richard Schmalbeck, Gerard V. Bradley, Jeanne E. Galvin, and Robert Barry. Based upon defendants' motions under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619 (West 1992)), the trial court dismissed all counts with prejudice. Sanctions based upon Supreme Court Rule 137 (134 Ill. 2d R. 137) totaling $26,872.76 were entered against plaintiff and his attorney, Jerrold H. Stocks. Plaintiff appeals from both the dismissal and the sanctions. Stocks appeals from the sanctions.

## I. PARTIES

### A. Plaintiff Steven R. Zielinski

Plaintiff first obtained his medical degree and then became a law student at the University of Illinois (U of I) College of Law. He became friends with defendant Bradley and was introduced to defendant Galvin. Eventually, he became the subject of complaints of sexual harassment from Galvin.

### B. Defendant Richard Schmalbeck

Schmalbeck, dean of the U of I College of Law (Dean), was responsible for certifying plaintiff's character, upon graduation, to the Illinois State Board of Law Examiners (Board of Examiners) (now the Board of Admissions to the Bar) and the Character and Fitness Committee (Committee). Based upon information from Bradley and Galvin, he refused to certify plaintiff's character.

### C. Defendant Gerard V. Bradley

Bradley was a law professor at the U of I College of Law, and the trial practice course was one of his responsibilities. He evidently introduced Galvin to plaintiff. He eventually recommended that the Dean not certify plaintiff as being morally fit to practice law in Illinois. Bradley was (as were Galvin, Barry, and plaintiff) involved in what is popularly referred to as the "pro-life movement."

### D. Defendant Jeanne E. Galvin

Galvin was a student at the U of I College of Law, as well as be-

ing a student in Bradley's trial practice course. She was active in the pro-life movement and sought medical knowledge from plaintiff in connection with her pro-life activities. She eventually complained of plaintiff's harassment.

### E. *Defendant Robert Barry*

Defendant Barry is apparently a priest who was an advisor to a pro-life organization that existed on the U of I campus. Plaintiff, for a time, was apparently part of this pro-life group.

### F. *Jerrold H. Stocks*

Stocks is plaintiff's attorney of record in the trial court proceedings.

## II. BACKGROUND

The pleadings and arguments provide a view of the background for the cause of action. Plaintiff and Bradley were friends. Bradley introduced plaintiff to Galvin. All were interested in the pro-life movement, and Galvin thought plaintiff's medical background would be helpful. Plaintiff's interest in Galvin eventually went beyond the pro-life movement. Galvin's interest did not go beyond friendship, and she rebuffed plaintiff. According to Galvin's communication to Bradley, and eventually to Schmalbeck, plaintiff's conduct was, in her opinion, sexual harassment and included plaintiff's contact with Galvin's parents. Bradley rebuked plaintiff. Bradley's communication to Schmalbeck included allegations that plaintiff had made false allegations of unethical conduct by Galvin in her trial practice participation. Bradley's communication to Schmalbeck stated that plaintiff was not morally fit to practice law. Schmalbeck informed plaintiff that he was not furnishing the Board of Examiners with the usual certification related to character and fitness.

Barry allegedly made statements to the pro-life group that plaintiff had sexually harassed Galvin. He allegedly also responded negatively in a report to the Committee. The negative report was based upon the alleged harassment. After a hearing before the Committee, plaintiff was granted the license to practice law in Illinois in May 1993.

Plaintiff received his law degree in August 1991 and, about April 30, 1992, delivered to Schmalbeck a form certificate from the Board of Examiners. This form was used to establish that the applicant for law license had obtained necessary educational requirements. It also called for a reference to the applicant's character and fitness to practice law.

## A. *Board of Examiners and the Committee*

Supreme court rules relevant to issues and time were Supreme Court Rules 701, 702, 704, 708, and 709 (134 Ill. 2d Rules 701, 702, 704, 708, 709). The rules effective until July 1, 1992, are relevant. (These rules were amended effective July 1, 1992.) "[G]ood moral character and general fitness to practice law" is a condition of admission. (134 Ill. 2d R. 701.) The application for license to practice was made to the Board of Examiners, a board appointed by the Supreme Court of Illinois. A Committee was (and is) appointed for each judicial district of the State, and members of the Board of Examiners were *ex officio* members. 134 Ill. 2d R. 708(a).

Both the Board of Examiners and the Committee were provided with the power to adopt and alter rules not inconsistent with their functions. (134 Ill. 2d R. 709(a).) They also had authority to hear complaints. 134 Ill. 2d R. 709(b).

Plaintiff's procedure for application for the bar exam and license to practice law included a form from the U of I College of Law that stated:

> "As an inducement to the Illinois Board of Law Examiners and/or any Character and Fitness Committee to investigate and reach a determination respecting my moral character, reputation and fitness for the practice of law, *I hereby release, discharge and exonerate* the Illinois Board of Law Examiners, the Character and Fitness Committees, their members, agents and representatives, and *any person* or entity *furnishing documents, records or other information, from any and all liability of every nature and kind arising out of any such investigation or out of the furnishing, inspection or use of such documents, records, and other information.*" (Emphasis added.)

## B. *Plaintiff's Complaint*

### 1. Count I

On April 29, 1993, plaintiff filed his complaint against defendants. Count I alleged deprivation of rights under section 1983 of the Civil Rights Act of 1871 (Act) (42 U.S.C. § 1983 (1988)) against Schmalbeck and alleged (1) at all relevant times, Schmalbeck was Dean at the U of I College of Law; (2) plaintiff was enrolled as a law student from 1988 to 1991, and he received his degree in August 1991; (3) during his tenure as a student, plaintiff was never the subject of a disciplinary proceeding or advised of any adverse matters in his record; (4) about April 30, 1992, he tendered to Schmalbeck the certificate required by the Board of Examiners; (5) Schmalbeck executed a "Certificate of Legal Education" and standard recommendation for plaintiff but, on May 27, 1992, announced his intention to withhold

the standard recommendation for plaintiff on the basis of an investigation of plaintiff in which he solicited comments from faculty, including a May 5, 1992, memorandum from Bradley; (6) Schmalbeck took no steps to verify the charges made in the solicited information; (7) much of the information solicited as part of the investigation related to personal relationships and public statements made by plaintiff on public policies which bore no relationship to plaintiff's attendance or performance as a student at the U of I College of Law and was also lacking in substantive merit; (8) Schmalbeck, acting under color of State authority, issued a *de facto* sanction against plaintiff by withdrawing the standard recommendation; (9) plaintiff received no notice of the investigation and was afforded no opportunity to rebut the charges; (10) Schmalbeck denied the existence of the file assembled on plaintiff, including the "Benfield file," despite requests from plaintiff and his representative for access to it; (11) Schmalbeck forwarded portions of the file to the Committee and withheld portions of it, including the "Benfield file" and certain exculpatory documents, and assured the Committee that the withheld documents would not add significantly to the information already received; (12) Schmalbeck's actions constituted a deprivation of rights under amendments I, IV, and XIV of the United States Constitution (U.S. Const., amends. I, IV, XIV), denying plaintiff his rights in one or more of the following ways: (a) procedural due process because there was no notice and hearing; (b) substantive due process in that the investigation and sanction constituted an arbitrary and capricious action in the absence of authority to act; (c) his freedom of enterprise to practice as a lawyer, doctor, consultant, or speaker or, alternatively, delayed or restricted such freedom; (d) his first amendment right of access to information in the investigative file; (e) his first amendment right of free speech and to petition the government, in that Schmalbeck's actions were based wholly or partly on comments plaintiff had made in the media regarding lawsuits he had filed against the U of I and Bradley; (f) his right to privacy under amendments I, III, IV, V, and IX of the United States Constitution (U.S. Const., amends. III, IX) by assembling a dossier containing information irrelevant to the legitimate operations of the U of I College of Law and disseminating that information to third persons; (g) the right to be free of malicious prosecution and abuse of process because the investigation was in retaliation for lawsuits and prior complaints against the faculty; and (h) the equal protection of the laws, rules, and regulations of the U of I College of Law by treating plaintiff differently than other graduates for whom the standard recommendation was issued; and (13) as a proximate result of the foregoing, plaintiff suffered, and continues to suffer, from extreme mental

anguish and emotional harm with physical manifestations, sustained damage to his reputation, great embarrassment and humiliation, lost, and continues to lose, business and employment opportunities and income, and has had his liberty restricted. Plaintiff asked for compensatory damages and attorney fees. He also alleged he was entitled to punitive damages.

### 2. Count II

Count II was against Bradley and alleged a deprivation of plaintiff's rights under section 1983 of the Act. It made many of the same allegations as in count I. Where different, it alleged (1) Bradley participated in Schmalbeck's investigation and incited Schmalbeck to act by making allegations against plaintiff orally and reduced some of them to writing in his May 5, 1992, memorandum; (2) Bradley participated with Schmalbeck in issuing the *de facto* sanction by withdrawing the Dean's certificate with the standard recommendation; (3) from April 1990 to April 1992, Bradley made allegations against plaintiff of sexual harassment, unethical conduct, publication of false statements, and other conduct, while urging disciplinary action against plaintiff; (4) Bradley, while cloaked with State authority, induced or conspired with Galvin to bring the aforementioned charges in retaliation for plaintiff's reports of potential misconduct on Bradley's or Galvin's part, or to coerce the withdrawal of his reports, and these actions contributed to the issuance of the *de facto* sanction against plaintiff; and (5) Bradley's actions deprived plaintiff of his rights in the same manner as alleged in count I. This count asked for compensatory and punitive damages.

(The material discussing counts III and IV is not to be published pursuant to Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994).)

### 5. Count V

Count V charged deprivation of rights under section 1983 of the Act against Galvin and realleged most of the allegations of count II. In addition, it alleged that Galvin was a willing participant in the joint activities of Schmalbeck and Bradley, thus making her liable for damages. Plaintiff asked for compensatory and punitive damages.

(The material discussing counts VI through XII and section C on the motions to dismiss is not to be published pursuant to Supreme Court Rule 23.)

### D. *Trial Court Dismissal*

On December 22, 1993, after hearing arguments of counsel and receiving extensive memoranda of law from all parties, the court issued a memorandum of decision, in which it dismissed all counts of

the complaint without leave to reinstate. As to count I, the court found that Schmalbeck was protected by absolute immunity for communications with the Committee. Even if absolute immunity were not to apply, he would be entitled to qualified immunity as the rights plaintiff claims were violated are not clearly established in the law. The court found that dismissal was warranted under both sections 2—615 and 2—619 of the Code. It noted that plaintiff had signed a release form which was valid and binding and that his allegations of coercion and extortion were without foundation.

As to count II, the court found its reasoning as to count I applied to this count also. The court found there were insufficient allegations to support plaintiff's theory that Bradley was acting under color of law and in concert with Schmalbeck.

(The discussion of the court's dismissal of counts III and IV is not to be published pursuant to Supreme Court Rule 23.)

Count V was dismissed under section 2—615 of the Code, finding no facts to support a conspiracy or action by Galvin under color of law. Her statements were also privileged.

(The discussion of the court's reasoning in dismissing counts VI and VII and imposing sanctions is not to be published pursuant to Supreme Court Rule 23.)

### III. ANALYSIS

Plaintiff's brief on appeal sets forth the issues presented for review:

"I. WHETHER A LAW SCHOOL GRADUATE HAS CONSTITUTIONALLY PROTECTED PROPERTY RIGHTS AND LIBERTY INTERESTS IN HIS DEGREE, THE RIGHTS AND ENTITLEMENTS APPERTAINING TO THE DEGREE, HIS GOOD STANDING, AND THE INTEGRITY OF HIS STUDENT RECORD.

II. WHETHER THE DEFENSE OF QUALIFIED IMMUNITY IS APPLICABLE TO THE RESPECTIVE DEFENDANTS FOR DEPRIVATIONS OF THE CONSTITUTIONALLY PROTECTED PROPERTY RIGHTS AND LIBERTY INTERESTS IMPLICATED TO THE DEGREE, THE RIGHTS AND ENTITLEMENTS THERETO APPERTAINING TO THE DEGREE, HIS GOOD STANDING, AND THE INTEGRITY OF HIS STUDENT RECORD.

III. WHETHER ABSOLUTE JUDICIAL PRIVILEGE IS A DEFENSE TO THE CONDUCT CONSTITUTING THE DEPRIVATION OF FEDERAL CONSTITUTIONAL RIGHTS OR FOR DEFAMATORY COMMUNICATIONS TO THE COMMITTEE ON CHARACTER AND FITNESS AND, IF SO, THE SCOPE AND EXTENT OF THE PRIVILEGE.

IV. WHETHER THE PRINCIPLES OF CONTINUING TORT APPLY TO THE TORTS OF DEFAMATION, INTENTIONAL INFLICTION OF EMOTIONAL HARM, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND MALICIOUS PROSECUTION.

V. WHETHER SUFFICIENT FACTS WERE ALLEGED ESTABLISHING CIVIL CONSPIRACY BETWEEN THE RESPECTIVE DEFENDANTS IN CONNECTION WITH THE STATE LAW TORT CLAIMS.

VI. WHETHER THE DEFENSES OF PRIVILEGE, IMMUNITY AND STATUTE OF LIMITATIONS PROPERLY ARE RAISED PURSUANT TO A 2—615 MOTION AS OPPOSED TO A 2—619 MOTION.

VII. WHETHER THE RELEASE AND AUTHORIZATION REQUIRED BY THE STATE BOARD OF LAW EXAMINERS AND A CLEARANCE FORM REQUIRED BY THE UNIVERSITY OF ILLINOIS COLLEGE OF LAW CONSTITUTE ARE [sic] UNENFORCEABLE RELEASES, AND IF NOT, THE SCOPE AND EXTENT OF THE APPLICABILITY OF EACH.

VIII. WHETHER THE CONDUCT OF PLAINTIFF AND HIS ATTORNEY IN FILING THE COMPLAINT VIOLATED SUPREME COURT RULE 137 WARRANTING THE IMPOSITION OF SUBSTANTIAL SANCTION.

IX. WHETHER SANCTIONS FOR ATTORNEY'S FEES IN THE SUM OF $26,872.76 ARE EXCESSIVE.

X. WHETHER THE TRIAL COURT ERRED IN DISMISSING THE ENTIRETY OF THE ORIGINAL VERIFIED COMPLAINT WITHOUT LEAVE TO REINSTATE AND ABUSED ITS DISCRETION IN PREEMPTIVELY DENYING ANY OPPORTUNITY TO AMEND THE PLEADING." (Emphasis omitted.)

We determine that it is necessary to address only parts of these issues.

## A. *Section 1983 of the Act*

■ In seeking recovery under section 1983 of the Act, plaintiff attempts to equate the failure of the Dean to certify character and fitness with a deprivation of a constitutional or statutory right. Section 1983 of the Act provides in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution *** shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (42 U.S.C. § 1983 (1988).)

There is a constitutional protection of the right to practice law if the national requirements of bar admission are met. (*Rosenfeld v. Clark* (D. Vt. 1984), 586 F. Supp. 1332, 1338, *aff'd* (1985), 760 F.2d 253.) We find no authority or reason why section 1983 of the Act should extend to the investigative and recommendation process dictated by Illinois Supreme Court rules, Board of Examiners rules, and the Committee rules. In so ruling, we are aware that U of I College of Law officials are required to certify graduation data to the Board of Examiners. The certification material also includes reference to character and fitness. We also find the decision to certify character and fitness necessarily requires the use of discretion.

Section 1983 of the Act refers to "rights, privileges, or immunities secured by the Constitution." (42 U.S.C. § 1983 (1988).) The right involved in this case was the right to practice law in Illinois. This right could only be granted or prohibited under the provisions of the rules of the supreme court of this State. Those rules placed the determination of the right with the Board of Examiners and the Committee—not the U of I College of Law administration or faculty. These bodies did, in fact, determine the issue and recommended the license be granted to plaintiff. Plaintiff was licensed. We will not extend liability under section 1983 of the Act to those who are giving recommendations. They are not acting under the color of law:

> "Misuse of power, possessed by virtue of [S]tate law and made possible only because the wrongdoer is clothed with the authority of [S]tate law, is action taken 'under color of' [S]tate law." (*United States v. Classic* (1941), 313 U.S. 299, 326, 85 L. Ed. 1368, 1383, 61 S. Ct. 1031, 1043.)

(See also 15 Am. Jur. 2d *Civil Rights* § 18 (1976).) We determine those giving references to fact finders are not intended to be included with those acting "under color of [S]tate law."

While we find that section 1983 of the Act does not apply to those furnishing recommendations to the Committee, we also recognize the necessity of absolute immunity. The reasons for absolute immunity that apply to the former employer in *Kalish v. Illinois Education Association* (1987), 157 Ill. App. 3d 969, 510 N.E.2d 1103, also apply to law school administrators and faculty. The practice of law often involves confidential and fiduciary relationships, in addition to honest acknowledgement of legal capabilities. Those entering the practice of law are justifiably screened, and screening necessarily requires recommendations. If those asked for opinions and those who have relevant information are to be faced with the expense and worry of legal actions, based upon libel, slander, or section 1983 of the Act, the ability to obtain a frank and candid evaluation will be seriously

hampered. Absolute immunity must exist. In so ruling, we recognize the unique makeup of the Committee.

●3 From our examination of plaintiff's complaint, Schmalbeck's actions only involved information going to the Committee and, regardless of his official college position, there was only a status as supplier of information to the Committee. We find there was no conduct under the color of law and, in any case, there was absolute immunity as indicated by *Kalish*. Count I was properly dismissed. The same reasoning applies to count II, which was the section 1983 action against Bradley. There is no way it can be said that Galvin, a mere law student, was acting under color of law and count V, the 1983 action against Galvin, was properly dismissed.

(The remainder of the analysis is not to be published pursuant to Supreme Court Rule 23.)

## VII. CONCLUSION

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.